IN the MATTER OF the ARBITRATION AMONG:

MADISON LANDFILLS, INC., Plaintiff-Respondent-Petitioner,

v.

The LIBBY LANDFILL NEGOTIATING COMMITTEE, Defendant-Appellant.

Supreme Court

*No. 92–1731. Oral argument September 8, 1994.—Decided December 14, 1994.*

(Also reported in 524 N.W.2d 883.)

For the plaintiff-respondent-petitioner there were briefs by *William E. Callahan, Jr., Brett K. Miller* and

*Davis & Kuelthau,* Milwaukee and oral argument by *William E. Callahan.*

For the defendant-appellant there was a brief by *David B. Billing* and *Ross & Stevens, S.C.* and *Jerre L. Ziebelman, assistant corporation counsel, Dane County,* all of Madison and oral argument by *David B. Billing.*

Amicus curiae brief was filed by *Milton E. Neshek, Harry F. Worth, Jr.* and *Godfrey, Neshek, Worth & Leibsle, S.C.,* Elkhorn for the Wisconsin Manufacturers & Commerce.

Amicus curiae brief was filed by *Lisa S. Keyes, Robert W. Mulcahy* and *Michael, Best & Friedrich,* Madison for the Wisconsin Counties Association.

Amicus curiae brief was filed by *Thomas W. Harnisch,* counsel, Madison for The Wisconsin Towns Association.

DAY, J. This is a review of a decision of the court of appeals[1] reversing a judgment of the circuit court for Dane County, Honorable Gerald C. Nichol, Judge, which vacated and remanded an arbitration award of the Waste Facility Siting Board. This case presents two issues concerning the powers of the Waste Facility Siting Board (Board) during an arbitration proceeding under sec. 144.445, Stats. (1991–92): 1) must the Board delete a provision in the accepted final offer that would overturn preexisting local approval requirements that are not arbitrary or discriminatory, and 2) can the Board arbitrate landfill designs that would affect the operation of the facility.

---

[1] *Madison Landfills v. Libby Landfill,* 179 Wis. 2d 815, 509 N.W.2d 307 (Ct. App. 1993).

We hold that sec. 144.445, Stats., required the Board to delete a provision that would have eliminated preexisting local approval requirements that are not arbitrary or discriminatory. We also hold that the statute allowed the Board to arbitrate landfill design features that would have an affect on the operation of the facility. We therefore affirm the decision of the court of appeals and remand the case to the circuit court for further proceedings not inconsistent with this opinion.[2]

The relevant facts are not in dispute. Madison Landfills, Inc. (MLI) sought for several years to site a solid waste disposal facility in the town of Blooming Grove in Dane County. The siting was opposed by the Libby Landfill Negotiating Committee (LLNC), composed of representatives of the town of Dunn, the city of Madison, and Dane County, pursuant to the statutory procedure set out in secs. 144.445(7)(a), Stats.[3] The town of Blooming Grove did not participate on the local negotiating committee because it initially approved of the landfill site and so did not pass a siting resolution or appoint a representative within the 60 day period allowed by statute. Section 144.445(6)(a), Stats.[4] In

___

[2] The court of appeals upheld the circuit court's determination that the source of waste was not an arbitrable issue. Neither party petitioned this court for review of that holding.

[3] Section 144.445(7)(a), Stats. (1991–92) provides in part:

**144.445(7)(a)** Local Committee. *Appointment of members.* Members of the local committee shall be appointed by the governing body of each affected municipality passing a siting resolution, as follows: . . .

[4] Section 144.445(6)(a), Stats. (1991–92) provides in part:

**144.445(6)** Siting Resolution. (a) *Municipal participation.* An affected municipality may participate in the negotiation and arbitration process under this section if the governing body adopts a

January 1990, MLI filed for arbitration. In May 1991, the Board ordered MLI and LLNC to submit final offers for the purpose of binding arbitration.

Binding arbitration is the final step in the statutory scheme for landfill siting. MLI and LLNC began negotiations in 1985 pursuant to Section 144.445(9)(a), Stats.[5] These negotiations were unsuccessful, and, in August 1988, at the request of both parties, the Board appointed a mediator. Section 144.445(9)(c), Stats.[6] Still unable to reach an agreement, in February 1989, MLI petitioned the Board to arbitrate the dispute under sec. 144.445(10)(b), Stats.[7] The Board denied the petition and ordered the parties to continue negotiating. Section 144.445(10)(d), Stats.[8] When these

siting resolution and appoints members to the local committee within 60 days after the municipality receives the written request from the applicant . . .

[5] Section 144.445(9)(a), Stats. (1991–92) provides in part:

**144.445(9)** Negotiation. (a) *Commencement of negotiation.* Negotiation between the applicant and the local committee may commence at any time after receipt of notification of participation from the board under sub. (6)(b). . . .

[6] Section 144.445(9)(c), Stats. (1991–92) provides in part:

**144.445(9)** Negotiation. (c) *Mediation.* Negotiating sessions may be conducted with the assistance of a mediator if mediation is approved by both the applicant and the local committee.

[7] Section 144.445(10)(b), Stats. (1991–92) provides:

**144.445(10)** Arbitration. (b) *Unilateral petition for arbitration.* Either the applicant or the local committee may submit an individual written petition to the board to initiate arbitration under this subsection but not earlier than 120 days after the local committee is appointed under sub. (7)(a).

[8] Section 144.445(10)(d), Stats. (1991–92) provides in part:

**144.445(10)** Arbitration. (d) *Order to continue negotiation.* The board may issue a decision ordering the applicant and the local

negotiations again broke down, MLI petitioned for the arbitration which was granted. While negotiating with LLNC, MLI was simultaneously proceeding in an environmental feasibility hearing before the Wisconsin Department of Natural Resources (DNR) as required by Chapter 144, Stats. The design features of the facility were a principal issue throughout the hearing, and MLI submitted a report containing data and drawings about the designs. In January 1991, the DNR concluded that MLI's proposed facility was feasible and needed. Section 144.44(2)(nm) et seq., Stats. (1991–92).

Before submitting its final offer, MLI petitioned the Board for an arbitrability determination. In its petition, MLI argued that the Board lacked authority to arbitrate the following issues: 1) the design of the landfill liner and cap, 2) the design of the gas control system, 3) the design of the environmental testing and monitoring systems, and 4) the source of waste that the facility could accept for disposal. The Board found all four issues to be arbitrable.

Thereafter, MLI and LLNC submitted their final offers. MLI's final offer contained the following provision: "Any and all preexisting local approvals shall be deemed not applicable." The preexisting approval at issue was the Dane County zoning ordinance, enacted in 1978. That ordinance is applicable to the Town of Blooming Grove, in which the Libby Landfill Site is located, because the town adopted the county zoning ordinance in 1983. Section 59.97(5)(c), Stats.[9]

_____

committee to continue negotiating for at least 30 days after the date of the notice if, in the judgment of the board, arbitration can be avoided by the negotiation of any remaining issues. . . .

[9] Section 59.97(5)(c), Stats. (1991–92), provides in part:

**59.97 Planning and zoning authority. (5)** Formation of zoning ordinance; procedure. (c) A county ordinance adopted as

Although Blooming Grove approved of the use of the site as a solid waste disposal facility in a town resolution,[10] the proposal was still subject to county zoning because the county board did not approve the town's action. Section 60.62(3), Stats.[11] For a waste site to operate on the land, it had to be rezoned from A–1 Exclusive Agricultural to A–2 Agricultural and a conditional use permit issued. If the Board had accepted the provision in MLI's final offer, the Board would have overruled the county zoning ordinance, in effect rezoning the land and issuing the permit.

The Board issued its arbitration award (Award) in November 1991. The Award adopted MLI's final offer, but deleted the provision that would have nullified the local zoning ordinance. The Board found that it was required to delete that provision, and stated:

> The legislature intended the negotiation-arbitration process, to assure, among other things, that "arbitrary or discriminatory policies and actions of local governments which obstruct the establishment of solid waste disposal facilities . . . can be set aside." Sec. 144.445(2)(a), Wis. Stats. The legislature's declaration allows the Board to set aside arbitrary or discriminatory local approvals that

provided by this section shall not be effective in any town until it has been approved by the town board. . . .

[10] Blooming Grove passed resolutions approving a rezoning of the land and a conditional use permit on February 4, 1986. The Town later rescinded its approval of the site at a town meeting in February 1991.

[11] Section 60.62(3), Stats. (1991–92), provides:

**60.62 Zoning authority if exercising village powers.**
**(3)** In counties having a county zoning ordinance, no zoning ordinance or amendment of a zoning ordinance may be adopted under this section unless approved by the county board.

obstruct the establishment of solid waste facilities. Thus it follows that the Board lacks authority to set aside local approvals that are neither arbitrary nor discriminatory. Here the Board finds the local zoning regulations applied to this case at this time are neither arbitrary nor discriminatory.

In January 1992, MLI petitioned the Dane county circuit court for an order either modifying and correcting the Award pursuant to sec. 788.11, Stats.,[12] or vacating the Award pursuant to sec. 788.10, Stats.,[13] both applicable to Waste Facility Siting Board awards under sec. 144.445(10)(r),[14] on the grounds that the Board had exceeded its authority. At no time did MLI assert that the Board erred in finding that the zoning

---

[12] Section 788.11, Stats. (1991–92) provides in part:

**788.11 Modification of award. (1)** In either of the following cases the court in and for the county wherein the award was made must make an order modifying or correcting the award upon the application of any party to the arbitration: . . .

(b) Where the arbitrators have awarded upon a matter not submitted to them. . . .

[13] Section 788.10, Stats. (1991–92) provides in part:

**788.10 Vacation of award, rehearing by arbitrators. (1)** In either of the following cases the court in and for the county wherein the award was made must make an order vacating the award upon the application of any party to the arbitration: . . ..

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

[14] Section 144.445(10)(r), Stats. (1991–92) provides:

**144.445(10) Arbitration.** (r) *Applicability of arbitration statutes.* Sections 788.09 to 788.15 apply to arbitration awards under this subsection.

ordinance was not arbitrary or discriminatory.[15] MLI's only contention was that the Board did not have the power to delete the clause on the applicability of local approvals. The circuit court granted MLI's petition, vacating the Award and remanding the case for further arbitration.

LLNC appealed. The court of appeals reversed the circuit court. It held that the Board properly deleted the provision relating to preexisting local approvals and that the Board was correct in concluding the design of the landfill liner and cap, the gas control system, and the environmental monitoring and testing system to be arbitrable as "operational concerns" under sec. 144.445(8)(b), Stats. (1991–92). MLI petitioned this court for review of these holdings, and we granted their petition.

## STANDARD OF REVIEW

[15] The Board was not given an opportunity to rule on the application of the local approvals to MLI because MLI did not ask Dane County to make a final determination on the issue prior to the arbitration. MLI instead took their claim that the Dane County Board of Supervisors acted in an arbitrary and capricious manner in denying MLI's petition for rezoning to the circuit court. While this appeal was pending, the Court of Appeals issued an opinion affirming the circuit court decision that Dane County's denial of MLI's petition for rezoning was not arbitrary, capricious or unreasonable. *State ex rel. Madison Landfills, Inc. v. Dane County,* 183 Wis. 2d 282, 288, 515 N.W.2d 322 (Ct. App. 1994). The court of appeals decision was released on March 24, 1994, and MLI did not file a petition for review within the statutorily prescribed period.

The parties disagree on the applicable standard of review. MLI argued[16] that the decision of the Board should be reviewed using the standards applicable to administrative agency adjudications of contested cases. LLNC argued that the Board's decision should be given deference whether it was reviewed using the standards applicable to arbitration awards or those applicable to contested cases.

We conclude that the legislature has chosen arbitration as a dispute resolution mechanism and intended for review of the decision to accord with the Wisconsin Arbitration Act. The court will defer to that decision and review the agency decision according to the standards that apply to arbitration awards.

The right of judicial review is entirely statutory, and decisions of administrative agencies are not reviewable unless made so by the statutes. *Wisconsin's Environmental Decade v. Public Serv. Comm'n,* 93 Wis. 2d 650, 657, 287 N.W.2d 737, 741 (1980). Ordinarily, the right to review and the standard of review for an administrative action are governed by secs. 227.52 to 227.58, Stats. (1991–92), the Wisconsin Administrative Procedure Act. However, the Wisconsin Administrative Procedure Act only applies to rulemaking decisions of the Waste Facility Siting Board, and the Board's action here was not rulemaking. Section 227.03(2), Stats.[17] Therefore, for the arbitration award

---

[16] MLI argued in their initial brief to this Court that the standards applicable to arbitration awards should apply, Petitioner's Brief, p. 24, but in its reply brief argued that administrative agency standards apply instead. Petitioner's Reply Brief, p. 1–2.

[17] Section 227.03(2), Stats. (1991–92), provides:

of the Board to be reviewable, Section 144.445 must contain a judicial review provision.

That provision is sec. 144.445(10)(r), Stats. (1991–92), which states: "Sections 788.09 to 788.15 apply to arbitration awards under this subsection." Those sections are the portions of the Wisconsin Arbitration Act pertaining to judicial review of arbitration awards. In particular, secs. 788.10 and 788.11, Stats., provide very specific and limited grounds for overturning or modifying the decision of an arbitrator. The standards of review applicable to these statutes are well settled. Further, the legislature demonstrated that it recognized the exclusion of sec. 144.445 from Chapter 227 by providing for judicial review according to Chapter 227 for decisions of the board on default.

> **227.03 Application of this chapter.** **(2)** Except as provided in s. 108.15, only the provisions of this chapter relating to rules are applicable to matters arising out of s. 66.191, 1981 stats., s. 40.65 (2), 144.445, 303.07(7) or 303.21 or subch. II of ch. 107 or ch. 102, 108, or 949.

Each of the sections and chapters exempted from Chapter 227 either has a provision that states the procedures and standards for judicial review or states that the Chapter 227 applies. Chapter 107 (Mining and Metal Recovery) provides for review via a full evidentiary hearing in the circuit court. Section 949.11 (Awards for the Victims of Crimes) provides for the Chapter 227 procedures to apply. Chapter 102 (Worker's Compensation) provides for review only for determinations of whether the agency acted within its powers and for fraud. Sections 66.191, 1981 stats. (Municipal Law Death and Disability Benefits), 40.65(2) (Public Employe Disability and Death Benefits), 303.07(7) (Prison Labor County Reforestation Camps), and 303.21 (Prison Labor Injuries to Prisoners) all provide for review according to the terms of Chapter 102. And, Chapter 108 (Unemployment Compensation) provides for review of questions of law only using the Chapter 102 standards.

sec. 144.445(9)(e), Stats.[18] Therefore, although the legislature did not expressly state that the traditional standards for arbitration awards should be used, we conclude that was their intent. As such, review of the Board's decisions is not subject to review as a contested case, as MLI argued. Instead, pursuant to the legislative declaration in sec. 144.445(10)(r), the scope of judicial review is that for review of arbitration awards.

Applying these well settled standards to this case, this Court will overturn the Board's decision on the preexisting local approval requirements issue only for "manifest disregard for the law" or a "perverse misconstruction . . . plainly established." *Jt. School Dist. No. 10 v. Jefferson Ed. Asso.,* 78 Wis. 2d 94, 117–18, 253 N.W.2d 536 (1977); *City of Madison v. Firefighters,* 133 Wis. 2d 186, 190–91, 394 N.W.2d 766 (Ct. App. 1986). However, an arbitrator's decision of substantive arbitrability—whether the parties agreed to submit an issue to arbitration—is reviewed de novo by the courts. *Jt. School Dist. No. 10,* 78 Wis. 2d at 101–02. The Board's conclusion on the arbitrability of the design features is a substantive arbitrability decision, and so is subject to de novo review by this Court.

### *PREEXISTING LOCAL APPROVALS*

---

[18] Section 144.445(9)(e), Stats. (1991–92) provides in part:

**144.445(9) Negotiation.** (e) *Failure to participate; default.* . . . Notwithstanding s. 227.03(2), the decision of the board on default is subject to judicial review under ss. 227.52 to 227.58. . . .

Once both sides submit final offers, the Board may issue an arbitration award.[19] That award, "shall adopt without modification, the final offer of either the applicant or the local committee except the arbitration award *shall delete those items which* are not subject to arbitration under sub (8) or *are not consistent with the legislative findings and intent under subs. (1) and (2)."* Section 144.445(10)(p), Stats. (1991–92) (emphasis added). The Board deleted the provision in MLI's final offer that provided for all preexisting local approval requirements to be inapplicable to the site, finding it to be inconsistent with the legislative findings and intent of secs. 144.445(1) and (2), Stats.[20] We agree.

---

[19] If five of the seven Board members cannot agree on an award, the governor issues the award. sec. 144.445(10)(p), Stats. (1991–92).

> **144.445(10) Arbitration.** (p) *Arbitration award.* Within 90 days after the last day for submitting final offers under par. (f), the board may issue an arbitration award with the approval of a minimum of 5 board members. If the board fails to issue an arbitration award within this period, the governor shall issue an arbitration award . . ..

[20] Section 144.445(1), Stats. (1991–92) provides in part:

> **144.445 Solid and hazardous waste facilities: negotiation and arbitration.** (1) Legislative findings. . . . (d) The legislature further finds that the availability of suitable facilities for solid waste disposal and the treatment, storage and disposal of hazardous waste is necessary to preserve the economic strength of this state and to fulfill the diverse needs of its citizens.

> (e) The legislature further finds that whenever a site is proposed for the solid waste disposal or the treatment, storage or disposal of hazardous waste, the nearby residents and the affected municipalities may have a variety of legitimate concerns about the location, design, construction, operation, closing and long-term care of facilities to be located at the site, and that these facilities must be

The question of whether local zoning ordinances apply to a proposed solid waste facility that the Department of Natural Resources has found to be environmentally feasible has been at issue for at least sixteen years. In 1978, the Court of Appeals held the law as of 1975 did not give the DNR the power to override local zoning ordinances. *Nelson v. DNR,* 88 Wis. 2d 1, 10, 276 N.W.2d 302 (Ct. App. 1979), *summarily aff'd* 96 Wis. 2d 730, 292 N.W.2d 655 (1980). In that case, the court of appeals stated, "[u]nless and until the leg-

established with consideration for the concerns of nearby residents and the affected municipalities.

(f) The legislature further finds that local authorities have the responsibility for promoting public health, safety, convenience and general welfare, encouraging planned and orderly land use development . . . and that the reasonable decisions of local authorities should be considered in the siting of solid waste disposal facilities and hazardous waste facilities.

(g) The legislature further finds that the procedures for the siting of new or expanded solid waste disposal facilities and hazardous waste facilities under s. 144.44, 1979 stats., and s. 144.64, 1979 stats., are not adequate to resolve many of the conflicts which arise during the process of establishing such facilities.

Section 144.445(2), Stats. (1991–92) provides:

**144.445(2) Legislative intent.** It is the intent of the legislature to create and maintain a comprehensive policy of negotiation and arbitration between the applicant . . . and a committee representing the affected municipalities to assure that: (a) Arbitrary or discriminatory policies and actions of local governments which obstruct the establishment of solid waste disposal facilities and hazardous waste facilities can be set aside.

(b) The legitimate concerns of nearby residents and affected municipalities can be expressed in a public forum, negotiated, and, if need be, arbitrated with the applicant in a fair manner and reduced to a written document that is legally binding.

(c) An adequate mechanism exists under state law to assure the establishment of environmentally sound and economically viable solid waste disposal facilities and hazardous waste facilities.

islature wishes to grant the DNR the power to veto such local zoning determinations . . . such zoning policies are subject to review by the courts, and not by the DNR." *Id.* at 16.

Shortly after that decision, the legislature enacted the current statutory scheme for siting solid waste facilities, contained in sec. 144.445, Stats. That statute calls for negotiation or mediation and, if need be, arbitration between the party seeking to site a landfill and a committee made up of representatives of the local municipalities, all supervised by the Waste Facility Siting Board. The question here is whether the legislature, through sec. 144.445, Stats., granted the Board "the power to veto such local zoning determinations." *Id.* We conclude they did, but only in two limited situations: where the local approval requirement is less than fifteen months old, or where the local approval is arbitrary or discriminatory on its face or in application.

The legislature listed its findings and its intent in enacting the waste facility siting statute in sections (1) and (2) of 144.445, Stats.[21] MLI argues that secs. 144.445(1)(d) and (g), and 144.445(2)(c), Stats. support their reading. LLNC on the other hand argues that secs. 144.445(1)(e) and (f), and 144.445(2)(a) and (b), Stats. support their reading of the statute.

Section 144.445(2)(a) is the most specific of the legislative findings and statements of intent, and is directly applicable to this dispute. As such, that section is the principal basis for our holding. Section 144.445(2)(a), Stats. reads:

> **(2) Legislative intent.** . . . (a) Arbitrary or discriminatory policies and actions of local

---

[21] See *supra,* note 20.

governments which obstruct the establishment of solid waste disposal facilities and hazardous waste facilities can be set aside.

We must avoid any construction of a statute that would make a portion of the statute superfluous. *Kelly Co. Inc. v. Marquardt,* 172 Wis. 2d 234, 250, 493 N.W.2d 68 (1992). If the Board has unfettered discretion to set aside preexisting local ordinances as MLI argues, any policy or action could be set aside, no matter how rational or reasonable, thus making words "arbitrary or discriminatory" in sec. 144.445(2)(a), Stats. superfluous. This conclusion is also supported by the legislative finding that "reasonable decisions of local authorities should be considered in the siting of solid waste disposal facilities." Section 144.445(1)(f), Stats. Thus, when the legislature said that the Board "can" set aside "arbitrary and discriminatory policies and actions," we conclude they were also saying that the Board could not set aside those policies and actions of local governments that are not arbitrary and are reasonable.[22]

---

[22] An amicus brief submitted on behalf of Wisconsin Manufacturers & Commerce, a trade association, calls to our attention a December 1982 article in *Wisconsin Counties* magazine entitled '*Questions and Answers*' on Chapter 374, Laws of 1981. That article lends credence to their claim that the popular interpretation at the time the waste facility siting law was passed was that the Board could override any local ordinance, in opposition to the position taken by the Board in this case. However, the court will resort to the contemporaneous interpretation of a statute only where the meaning is ambiguous and cannot be clarified through the use of intrinsic tools of statutory construction. *Wauwatosa v. Milwaukee County,* 22 Wis. 2d 184, 189–90, 125 N.W.2d 386 (1963). We hold that intrinsic tools of statutory construction are sufficient to clear up

Legislative history of the statute also supports the action taken by the Board. 1981 Assembly Bill 936 repealed and recreated sec. 144.445, Stats. (1979) and created the negotiation and arbitration process. However, even in its original form, it made local approvals inapplicable only upon a finding by the DNR that the local approval requirement was unreasonable. *Memorandum from Legislative Council Staff on Summary of 1981 Assembly Bill 936, Relating to Solid and Hazardous Waste Management* (Jan. 5, 1982).

The waste facility siting bill was amended several times before passing. Assembly Substitute Amendment 4, with amendments, was the Bill the assembly eventually adopted and which became law after the Senate made minor changes.[23] Assembly Substitute Amendment 4 substituted the Board for the DNR as the body that determines the applicability of local approvals. The intent of the assembly in amending the bill was to give the Board, as the DNR had in the original bill, an "explicit but limited state override of local permits, approvals and zoning applicable to new or expanded solid waste . . . facilities." *Memorandum from Legislative Council Staff on Summary of Substantive Provisions in Assembly. Substitute Amendment 4 to 1981 Assembly Bill 936* (March 24, 1982).

If MLI's interpretation were accepted, the power of the Board to overrule local ordinances presented to it in a final offer would be unlimited. This is in direct conflict with the intent of the legislature to provide the

---

any ambiguity in the statute, so the popular construction of the statute at the time it was passed cannot change its meaning.

[23] The Senate amended the engrossed bill only once, and that amendment did not effect the Board's powers or duties. The Assembly approved the bill as amended by the Senate and the Governor signed the bill into law.

Board with only limited power to override local ordinances. As the Court of Appeals correctly stated, "the initial legislation explicitly providing for state override of local zoning ordinances was modified in the political process to provide a limited state override only where the Waste Facility Siting Board determined that a preexisting local approval was arbitrary or discriminatory." *Madison Landfills,* 179 Wis. 2d at 831.

This interpretation is buttressed by the fact that it comports with the differing power over local approvals based on their duration that Assembly Substitute Amendment 4 gave the Board. Local approvals, those that have been in effect less than 15 months at the time a potential landfill operator submits either a feasibility report or an initial site report to the DNR, are inapplicable to new or expanded sites. Section 144.445(5)(e), Stats.[24] Thus, the statute conclusively presumes that local ordinances enacted in the face of an impending site proposal are arbitrary and discriminatory. In contrast, it would be unreasonable to conclusively presume that local zoning ordinances in effect for years prior to the appearance of a potential landfill were enacted to discriminate against that use. Therefore, the legislature provided the arbitration mechanism to rule on whether those ordinances older than 15 months were arbitrary or discriminatory; that is, to determine the "applicability or nonapplicability of any preexisting local approvals." Section 144.445(8)(b)7, Stats.[25]

---

[24] Section 144.445(5)(e), Stats. (1991–92) provides:

**144.445(5) Applicability of Local Approvals.** (e) Except as provided under par. (f), a new or expanded facility is not subject to any local approvals which are not preexisting local approvals.

[25] Section 144.445(8)(b)7, Stats. (1991–92), provides:

MLI argues that the plain meaning of sec. 144.445(8)(b)7, Stats., allows *any* preexisting local approval to be set aside. However, this argument takes the provision out of context. The statute clearly presumes that a new landfill will be required to comply with preexisting local approvals. A site "is subject to preexisting local approvals" unless "specified as inapplicable in . . . an arbitration award." Sections 144.445(5)(c) and (d), Stats. (1991–92). Saying a site is subject to preexisting local approvals would mean little if any and all local ordinances that apply could be "specified inapplicable" by the mere insertion of language in a potential landfill operator's final offer. Further, sec. 144.445(2)(b), Stats., requires landfill applicants to apply for all local approvals, and prohibits an applicant from filing a feasibility report with the DNR until it has satisfied this requirement. Section 144.445(2)(b), Stats. (1991–92). And, the applicant is required to "undertake all reasonable procedural steps" toward obtaining local approvals required. Section 144.445(1m)(c), Stats. (1991–92).

It is true, as argued by MLI, that the circuit courts were available to determine if local approval requirements were arbitrary or discriminatory prior to the siting law. However, the legislature chose to delegate this function to the Board. It is not for this Court to decide if the legislature made a wise decision in choosing arbitration instead of the courts for resolution of these disputes.

MLI also argues that this Court's interpretation is contrary to the legislative determination that the

---

144.445(8) **Subjects of Negotiation and Arbitration.**
(b) Only the following items are subject to arbitration under this section: . . . 7. The applicability or nonapplicability of any preexisting local approvals.

establishment of facilities is a matter of statewide concern, and the great weight which that determination should be given. *Wisconsin Association of Food Dealers v. City of Madison,* 97 Wis. 2d 426, 431, 293 N.W.2d 540 (1980). The Board's interpretation, MLI argues, enfeebles the solid waste facility siting statutes by effectively giving local governments a veto power over landfill sitings. MLI states that solid waste disposal companies will not want to enter a time consuming, costly procedure when the local government has the final power to deny the facility absent the unlikely event of a zoning statute being found arbitrary or discriminatory. This, MLI argues, will in turn prevent the siting of any new landfills near populated areas of the state. While this may or may not be true,[26] the argument is a matter for legislative, not judicial, consideration.

Finally, even if this Court agreed with all of MLI's arguments, this would not be enough to overcome the "manifest disregard for the law" standard of deference due the Board. "An arbitrator cannot be said to have manifestly disregarded the law if substantial authority sustains the arbitrator." *Madison v. Madison Police Ass'n,* 144 Wis. 2d 576, 588, 425 N.W.2d 8 (1988) *(quoting Firefighters,* 133 Wis. 2d at 191). The express language of sec. 144.445(1) and (2), Stats., the legislative history of that section, and the overall tenor of sec.

---

[26] One countervailing consideration is that, although a landfill company cannot obtain a Board override of a local approval requirement that is not arbitrary or discriminatory, it can negotiate with the local committee to have such approval requirements set aside. Such a negotiated provision will be honored if the local governing bodies of each participating municipality approve the negotiated agreement. Sections 144.445(8)(a), 144.445(9)(k), Stats. (1991–92).

144.445 provide "substantial authority" for the Board's decision.

### ARBITRABILITY OF DESIGN FEATURES

The court of appeals held that the design of the 1) landfill liner and cap, 2) the landfill gas control system, and 3) the environmental monitoring and testing system were "operational concerns" and so were arbitrable under sec. 144.445(8)(b)5.[27] We agree.

■

Although we review de novo whether an issue is arbitrable, we will not deny an order to arbitrate a particular matter unless it may be said with "positive assurance" that the language defining the arbitrable issues is "not susceptible of an interpretation that covers the asserted dispute." *Jt. School Dist. No. 10,* 78 Wis. 2d at 112 *(quoting United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83 (1960)). Further, we resolve any doubts in favor of coverage. *Id.*

This Court's decision in *Jt. School Dist. No. 10* is particularly instructive. There the arbitrator held that an employment dispute was arbitrable under a contract that set out a limited list of arbitrable grievances. The employee claimed the dispute involved a "discharge and non-renewal" (an arbitrable dispute), while the school district claimed the dispute was a "counter-offer and non-acceptance" (a non-arbitrable dispute). Although the court noted that the invocation of the

---

[27] Section 144.445(8)(b)3, Stats. (1991–92) provides:

**144.445(8) Subjects of Negotiation and Arbitration.**
(b) Only the following items are subject to arbitration under this section: . . . 3. Operational concerns including, but not limited to, noise, dust, debris, odors and hours of operation but excluding design capacity.

contractual language did not halt the court's inquiry into the issue, it had no difficulty finding that the phrase was susceptible of the definition offered by the employee given the presumption of arbitrability created by the "positive assurance" standard. *Id.* at 112–13.

Similarly, section 144.445(5), Stats. (1991–92), provides a limited list of arbitrable matters. LLNC claims that the design features at issue are arbitrable under that section as "operational concerns including, but not limited to, noise, dust, debris, odors and hours of operation but excluding design capacity." Section 144.445(5)(b)3, Stats. (1991–92). MLI contends the design features do not fall within the definition of any of the arbitrable items. We do not end our review based on the mere invocation of the statutory language. However, we do conclude that sec. 144.445(5)(b)3, Stats. is susceptible to the definition put forward by LLNC and accepted by the Board.

The American Heritage Dictionary defines operational as "of or pertaining to an operation or a series of operations," and concern as "a matter that relates to or affects one." *American Heritage Dictionary,* Second College Edition, 305, 871 (1985). Thus, operational concern as used in the statute can mean any matter that relates to or affects the operation of a solid waste facility. The design features at issue are thus operational concerns because they affect the potential exposure of the community to harmful by-products and odors created by the operation of the waste facility.

While the features of the gas and environmental monitoring systems do not affect the day-to-day functioning of the facility, they nevertheless are operational concerns to the extent that they relate to potential nuisance problems similar to those illus-

trated by the list contained in sec. 144.445(5)(b)3, Stats.: "noise, dust, debris, odors. . . ." As such, we hold that the design aspects of the gas systems which affect nuisance factors, such as screening requirements, air pollution controls, and mitigation of noise and odor are arbitrable. Similarly, design aspects of the environmental monitoring system which affect noise, dust, debris, odor and screening are arbitrable operational concerns.

The features of the liner and cap are also susceptible to the definition of operational concerns in the statute. Only one operational concern is not arbitrable, design capacity. However, the liner material and cover are specifically excluded from the definition of design capacity. Wis. Adm. Code NR 500.03(33).[28] If the liner material and cover were not operational concerns, there would be no need to exclude them from the definition of the one operational concern that is not arbitrable. Therefore, its exclusion from that definition means that the liner and cap are arbitrable operational concerns.

MLI argues that the liner and cap should not be considered operational concerns because the Board concluded that the leacheate collection system was not an operational concern, even though both control and collect leacheate. Obviously, for this inconsistency to have any bearing on the arbitrability of the liner and cap, the Board's decision on the leacheate collection system would have to be correct. Although we express no opinion on the arbitrability of the collection system, we do note that the inconsistency alone does not

---

[28] Wisconsin Administrative Code NR 500.03(33) provides:

**NR 500.03 Definitions.** (33) "Design capacity" means the total volume in-place in cubic yards of solid waste . . . but not including liner material, drainage blanket, final cover or topsoil.

require the court to overturn the Board's decision on the liner and cap, especially given the "positive assurance" standard.

Even without the presumption of arbitrability created by the "positive assurance" standard, we do not accept MLI's argument that "operational concerns" should be construed narrowly. We conclude the legislature intended a broad definition of the term. The statute says operational concerns are "not limited to" the list of issues in the statute. This means that the list is merely illustrative, not exclusive, and therefore should be construed broadly. MLI correctly states that the scope of arbitrable issues is narrower than the scope of negotiable issues. However, in the operational concerns subsection, the legislature did choose to use the expansive "but not limited to" language. Therefore, a broad interpretation of operational concerns is appropriate.

MLI accurately recognizes that this interpretation would allow the Board to adopt a proposal that differs from the plans used in the DNR feasibility review. However, contrary to MLI's assertions, the statute actually contemplates the possibility of an arbitration award more stringent than would be required by DNR regulations. Section 144.44(2)(n)2, Stats. (1991–92). Thus, arbitration proceedings are expressly permitted to overlap the DNR feasibility review, and the mere fact that an item is subject to DNR regulation does not take it outside the purview of the arbitration process. Even though the Board may adopt a plan that differs from the feasibility review, there is no danger of overruling environmental safety decisions made with DNR expertise. If the Board approves an item different from that in the DNR feasibility report, the item must be reviewed by the DNR to assure that the design is not

637

less stringent than that approved by the DNR prior to approval of the plan of operation or initial operating license. Sections 144.44(3)(c), (4)(b), Stats. (1991–92).

■

We hold that the court of appeals correctly concluded that the Board does not have the power to set aside preexisting local ordinances that are not arbitrary or discriminatory, and that the court of appeals was correct in concluding that the Board had the power to arbitrate design features that affected the operation of the facility. The cause is therefore remanded to the circuit court with instructions to reinstate and confirm the Board's Award pursuant to sec. 788.09, Stats.,[29] except for the portion of the Award concerning source of waste, which should, in accordance with the court of appeals decision, be vacated pursuant to sec. 788.10(1)(d), Stats.[30]

*By the Court.*—The decision of the court of appeals is affirmed, and the cause remanded to the circuit court for further proceedings not inconsistent with this opinion.

■

[29] Section 788.09, Stats. (1991–92), provides in part:

**788.09 Court confirmation award, time limit.** At any time within one year after the award is made any party to the arbitration may apply to the court in and for the county within which such award was made for an order confirming the award . . . .

[30] *See supra* note 13.