DeRosso Landfill Company, Inc. and Gordon DeRosso, Plaintiffs-Respondents-Petitioners,

v.

City of Oak Creek, Defendant-Appellant.

Supreme Court

*No. 94–0440. Oral argument January 9, 1996.—Decided May 13, 1996.*

(Also reported in 547 N.W.2d 770.)

643

For the plaintiffs-respondents-petitioners there were briefs by *Hugh R. Braun, Beth A. Thorson* and *Godfrey, Braun & Hayes*, Milwaukee and oral argument by *Hugh R. Braun*.

For the defendant-appellant there was a brief and oral argument by *Lawrence J. Haskin*, city attorney, Oak Creek.

SHIRLEY S. ABRAHAMSON, J. This is a review of a published decision of the court of appeals, *DeRosso Landfill Co. v. City of Oak Creek*, 191 Wis. 2d 46, 528 N.W.2d 468 (Ct. App. 1995), reversing an order of the Circuit Court for Milwaukee County, George A. Burns, Jr., judge. The circuit court ordered a permanent injunction restraining the City of Oak Creek (the City) from interfering with DeRosso Landfill Company, Inc. and Gordon DeRosso (the plaintiffs) in their implementation of a plan, approved by the Department of Natural Resources (DNR), to fill with clean fill a 300,000-cubic-yard hole located on ten acres of land owned by Gordon DeRosso.[1] We reverse the decision of the court of appeals and remand the cause to the circuit court with directions to reinstate the permanent injunction.

The issue presented for our review is whether a solid waste facility exempt from regulation pursuant to Wis. Stat. § 144.44(7)(g) (1993-94)[2] must nevertheless

---

[1] Clean fill consists of "clean soil, brick, building stone, concrete, reinforced concrete, broken pavement, and unpainted or untreated wood." Wis. Admin. Code § NR 500.08(2)(a).

[2] Unless otherwise noted, all further statutory references are to the 1993-94 volume of the Wisconsin Statutes.

comply with a pre-existing municipal ordinance prohibiting that facility from being opened.[3]

The circuit court concluded that in enacting Wis. Admin. Code § NR 500.08(2)(a) pursuant to Wis. Stat. § 144.44(7)(g), the DNR has exercised authority vested in it by the legislature and has withdrawn the City's authority to regulate the proposed clean fill facility. The court of appeals reversed, holding that the statutory exemption merely restores the City's pre-existing authority to regulate the use of land within its borders.

We agree with the circuit court's analysis of the statutes. For the reasons explained below we conclude that the City's resolution and ordinance must yield before countervailing state legislation.

## I.

For purposes of this review, the facts are not in dispute. In June 1989 the DNR ordered the plaintiffs to close and cap with two feet of foundry clay a 40-acre landfill in Oak Creek that had reached capacity. In its closure order, the DNR also required the plaintiffs to submit a plan for the "abandonment" (restoration) of the "borrow source" (the land from which the clay would be excavated).

The plaintiffs' borrow source site is a ten-acre parcel of land owned by Gordon DeRosso, zoned for industrial use and located east of Pennsylvania Avenue and immediately across the street from the landfill between Ryan Road and State Highway 100 in Oak Creek. Excavations of clay from this site created a 300,000-cubic-yard hole which has filled with water,

---

[3] Section 11.09 of the Municipal Code of the City of Oak Creek prohibits the filling of land except in limited circumstances, none of which applies to the site in issue.

creating an artificial pond. In complying with the DNR order to restore this site, the plaintiffs commenced negotiations with the DNR, which in November 1990 culminated in the submission of a proposal to fill the site with clean fill.

The City, however, objected. Although the City had initially passed a resolution approving the use of the site as a clean fill repository and negotiated an agreement allowing the site to be filled with clean fill, the City was concerned that if the DNR alone regulated the filling of the site, the monitoring of materials placed there would be insufficient. Therefore, in June 1992 the City passed a resolution stating that because "the City of Oak Creek has environmental concerns regarding the proposed method of abandoning the borrow site," the site could not be filled with clean fill.

At the same time, however, the DNR indicated that it was moving toward an approval of the plaintiffs' proposal. In a letter sent to the City Attorney in July 1992, a DNR attorney stated that the plaintiffs' proposal, if properly implemented, would comply with DNR environmental regulations.[4] Although the DNR and the plaintiffs continued to negotiate over implementation matters such as how the site would be dewatered without adversely impacting the surrounding region, in June 1993 the DNR waste management engineer assigned to the plaintiffs' site stated in an affidavit that "[t]he DNR expects to issue final approval in the near future." The DNR approved the plaintiffs' proposal on October 6, 1993.[5]

---

[4] The DNR indicated that it would have approved a proposal to either fill the borrow source with clean fill or to leave it as a pond.

[5] On October 11, 1993, the plaintiffs were permitted to supplement the record with a copy of the DNR order.

In the interim, the plaintiffs had brought suit in circuit court seeking a declaratory judgment and a permanent injunction restraining the City from interfering with the proposed plan to fill the site with clean fill. In December 1993, following a hearing on the motion, the circuit court issued a memorandum decision stating that because Wis. Stat. § 144.44(7)(g) authorized the DNR to exempt certain facilities from applying for local approvals, it stood to reason that those facilities need not comply with local approvals either. "By providing that certain facilities may be exempted from local approval," stated the circuit court, "the legislature has clearly and expressly withdrawn municipal power to act as to exempt facilities" because "[a] city cannot prohibit what the state allows when the legislature has withdrawn municipal authority to act." Because the DNR had exempted clean fill facilities from applying for local approvals, the circuit court held that "the City's resolution and ordinance are invalid as to the DeRossos' plan to fill the site with clean fill." Consequently, the circuit court granted the plaintiffs' motion for an injunction.

The City appealed, and the court of appeals reversed the order of the circuit court, concluding that exemption from the regulatory scheme under Wis. Stat. § 144.44(7)(g) "merely leaves the parties—the operators and the localities—in the same position with respect to the exempt facilities as they would have been if that scheme did not exist." *DeRosso,* 191 Wis. 2d at 59-60. "Rather than withdraw Oak Creek's power to regulate," the court of appeals reasoned, "the exemption merely restores Oak Creek's pre-existing authority to regulate the use of land within its borders." *Id.* at 60-61. Because it determined that the City's resolution and ordinance did not conflict with the

legislature's statutory scheme for regulating waste facilities, the court of appeals concluded that the City's prohibition of the plaintiffs' facility passed muster under the preemption test set forth in *Anchor Savings & Loan Ass'n v. Madison EOC*, 120 Wis. 2d 391, 395-97, 355 N.W.2d 234 (1984). *DeRosso*, 191 Wis. 2d at 64-65. It therefore reversed the circuit court.

## II.

We first examine the powers of a local unit of government to regulate an issue of statewide concern. The parties, the circuit court, the court of appeals and this court agree that the plaintiffs' proposed clean fill facility would be a solid waste facility and that the legislature has explicitly provided that regulation of solid waste facilities is a matter of statewide concern.[6]

Labelling a matter one of statewide concern does not, however, automatically void local regulation. The court has frequently stated that a municipality may pass ordinances which, while addressed to local issues, concomitantly regulate matters of statewide concern. *Anchor*, 120 Wis. 2d at 395-96; *Wisconsin Envtl. Decade, Inc. v. DNR*, 85 Wis. 2d 518, 532-33, 271 N.W.2d 69 (1978); *see also* Thomas P. Solheim, *Conflicts Between State Statute and Local Ordinance in Wisconsin*, 1975 Wis. L. Rev. 840, 847-48.

---

[6] Wisconsin Stat. § 144.445(5) states, in pertinent part:

APPLICABILITY OF LOCAL APPROVALS. (a) The establishment of facilities is a matter of statewide concern.

Wisconsin Stat. § 144.445(3)(c) defines "facility" as "a solid waste disposal facility or a hazardous waste facility."

Nevertheless, a municipality's ability to regulate matters of statewide concern is limited. As the court stated six decades ago, "municipalities may enact ordinances in the same field and on the same subject covered by state legislation where such ordinances do not conflict with, but rather complement, the state legislation." *Fox v. Racine*, 225 Wis. 542, 546, 275 N.W. 513 (1937) (quoting *Milwaukee v. Childs Co.*, 195 Wis. 148, 151, 217 N.W. 703 (1928)). Therefore, wrote the *Fox* court, where " 'the state has entered the field of regulation, municipalities may not make regulation inconsistent therewith' " because "a municipality cannot lawfully forbid what the legislature has expressly licensed, authorized or required, or authorize what the legislature has expressly forbidden." *Fox*, 225 Wis. at 545, (quoting *Hack v. Mineral Point*, 203 Wis. 215, 219, 221, 233 N.W. 82 (1930)). The principle announced in *Fox* "has been the rule in Wisconsin and still is" the rule when addressing the question of whether state legislation preempts a municipal ordinance. *Anchor*, 120 Wis. 2d at 397; *see also Wisconsin Ass'n of Food Dealers v. City of Madison*, 97 Wis. 2d 426, 433 n.7, 293 N.W.2d 540 (1980).

Summarizing the court's preemption analysis, the *Anchor* court outlined four tests to determine when a state statute invalidates a local ordinance. A municipal ordinance is preempted if (1) the legislature has expressly withdrawn the power of municipalities to act; (2) it logically conflicts with state legislation; (3) it defeats the purpose of state legislation;[7] or (4) it vio-

---

[7] In *Wisconsin's Envtl. Decade, Inc. v. DNR*, 85 Wis. 2d 518, 535-36, 271 N.W.2d 69 (1978), for example, the court stated that "[e]ven assuming that" the ordinance and statute at issue did

lates the spirit of state legislation.[8] Should any one of these tests be met, the municipal ordinance is void.

The question of whether a statute preempts a municipal ordinance raises a question of law which we review independently, benefitting from the analyses of the circuit court and the court of appeals. In applying this state's analysis for determining the validity of a local regulation, we construe administrative rules in the same manner as statutes because administrative rules enacted pursuant to statutory authority have the force and effect of law. *State ex rel. Staples v. DHSS*, 115 Wis. 2d 363, 367, 340 N.W.2d 194 (1983); *Law Enforcement Stds. Bd. v. Lyndon Station*, 101 Wis. 2d 472, 489, 305 N.W.2d 89 (1981).

## III.

We now turn to the issue of whether a solid waste facility exempt from local approvals pursuant to Wis. Stat. § 144.44(7)(g) is nevertheless subject to local approvals such as the City's landfilling and excavation ordinance.

---

not constitute "logically conflicting legislation," the ordinance was nevertheless invalid because it frustrated the DNR's program of water resource management and therefore defeated a clear legislative purpose to vest the DNR with authority over the state's navigable waters.

[8] Pointing out that the state legislature had "adopted a complex and comprehensive statutory structure" regulating credit and lending as well as "a complete, all-encompassing plan" regulating savings and loan associations, *Anchor Savings & Loan Ass'n v. Madison EOC*, 120 Wis. 2d 391, 397, 399, 355 N.W.2d 234 (1984), the court concluded that the Madison ordinance at issue "was contrary to the spirit" of the legislature's statutory structure and therefore void. *Id.* at 402.

The City concedes, as it must, that under DNR regulations enacted pursuant to authority conferred by Wis. Stat. § 144.44(7)(g), clean fill facility operators such as the plaintiffs need not apply for local approvals. Wisconsin Stat. § 144.44(7)(g) authorizes the DNR to exempt low-hazard waste facilities from regulation under §§ 144.43 to 144.47 when such regulation "is not warranted in light of the potential hazard to public health or the environment." Wis. Stat. § 144.44(7)(g)2.[9] In exercising this authority the DNR has promulgated a rule which exempts clean fill facilities from the regulatory scheme requiring, *inter alia*, local approvals under Wis. Stat. § 144.44(1m)(b). Wis. Admin. Code § NR 500.08(2)(a).[10]

---

[9] Wisconsin Stat. § 144.44(7)(g) provides as follows:

(g) *Exemption from regulation; low-hazard waste.* 1. The department shall conduct a continuing review of the potential hazard to public health or the environment of various types of solid wastes and solid waste facilities. The department shall consider information submitted by any person concerning the potential hazard to public health or the environment of any type of solid waste.

2. If the department, after a review under subd. 1., finds that regulation under ss. 144.43 to 144.47 is not warranted in light of the potential hazard to public health or the environment, the department shall either:

a. Promulgate a rule specifying types of solid waste that need not be disposed of at a licensed solid waste disposal facility.

b. On a case-by-case basis, exempt from regulation under ss. 144.43 to 144.47 specified types of solid waste facilities.

c. Authorize an individual generator to dispose of a specified type of solid waste at a site other than a licensed solid waste disposal facility.

3. The department may require periodic testing of solid wastes and impose other conditions on exemptions granted under subd. 2.

[10] With limited exceptions which are not applicable here, Wis. Admin. Code § NR 500.08 exempts clean fill facilities from compliance with Wis. Admin. Code §§ NR 500 to 522. Conse-

According to the City, this exemption simply acknowledges that clean fill facilities are not subject to the negotiation and arbitration procedure embodied in ch. 144 and applicable to most hazardous waste facilities. Just because the facility is exempt from this application procedure, continues the City, does not suggest that the plaintiffs are entirely exempt from local approvals. Instead, reasons the City, the fact that clean fill landfills are exempt from licensing and regulation requirements under Wis. Stat. §§ 144.43 to 144.47 "actually underscores the fact that the regulatory field as it relates to exempt or clean fill landfills is left wide open for local municipalities." Brief for Respondent at 27.

The City argues that in promulgating a rule exempting clean fill facilities from the regulatory scheme authorized by Wis. Stat. §§ 144.43 to 144.47—including the requirement that prospective landfill operators apply for local approvals—the DNR

quently, an applicant seeking DNR approval for a clean fill facility is exempt from Wis. Admin. Code § NR 512.06(1), which states that "[a]n applicant subject to s. 144.445, Stats. shall apply for all applicable local approvals specified by a municipality under s. 144.44(1m)(b), Stats."

Wisconsin Stat. § 144.44(1m)(b) requires, in pertinent part, that "[p]rior to constructing a solid waste disposal facility or a hazardous waste facility, the applicant shall apply for each local approval required to construct the waste handling portion of the facility." Wisconsin Stat. § 144.44(1m)(a) adopts the definition of a local approval set forth in Wis. Stat. § 144.445(3)(d) as including "any requirement for a permit, license, authorization, approval, variance or exception or any restriction, condition of approval or other restriction, regulation, requirement or prohibition imposed by a charter ordinance, general ordinance, zoning ordinance, resolution or regulation by a town, city, village, county or special purpose district . . . ."

has returned jurisdiction and authority over such facilities to the municipalities. As a consequence of the exemption, the City contends, municipalities are placed in the same position with respect to such facilities that they would have been in had the regulatory scheme inscribed in the statutes and regulations never existed. As counsel for the City stated at oral argument, "what we have here is the removal of the State [DNR] from regulating the site, and what that does is leave open the subject matter for regulation by the local municipality."

If a municipality cannot itself regulate a facility exempt from state regulation, insists the City, that municipality would paradoxically exercise less control over the siting of a comparatively innocuous clean fill facility than it would exercise over the siting of those more hazardous non-exempt facilities subject to the negotiation and arbitration procedure inscribed in chapter 144. As the City points out, we have recently held that under this negotiation and arbitration procedure, a municipality's local approval requirements will ordinarily be set aside only if they are arbitrary and discriminatory on their face or in application. *Madison Landfills, Inc. v. Libby Landfill*, 188 Wis. 2d 613, 628, 524 N.W.2d 883 (1994). Therefore, concludes the City, local approvals applicable to those less hazardous facilities exempted from the negotiation and arbitration procedure are entitled to at least as much deference as the *Libby* court extended to the local approvals required for non-exempt hazardous waste facilities.

Furthermore, the City argues, its reading of the statutory and regulatory scheme comports with the legislature's recognition that local authorities have significant responsibility with respect to solid waste

disposal sites.[11] "[I]t is our citizens," stated counsel for the City at oral argument, "who are going to be most affected by the dust, the noise, the operation, the issue of contamination of the ground water, [and] what's going to happen when that water [in the landfill] is replaced." While "these are all issues of local concern," argued counsel, if the plaintiffs' facility is not subject to local approvals, the local concerns "would be totally ignored" and the City "would be out of the picture completely."

We acknowledge the importance of the City's local interests and share its concern with the protection of its residents. Were those the only interests at stake in this case, we might well be compelled by our state constitution to reach a different result, since Wis. Const. art. XI, § 3(1) vests in municipalities the right to deter-

---

[11] In support of this claim, the City directs our attention to Wis. Stat. § 144.445(1)(f) relating to negotiation and arbitration of solid and hazardous waste facilities, which states:

> The legislature further finds that local authorities have the responsibility for promoting public health, safety, convenience and general welfare, encouraging planned and orderly land use development, recognizing the needs of industry and business, including solid waste disposal and the treatment, storage and disposal of hazardous waste and that the reasonable decisions of local authorities should be considered in the siting of solid waste disposal facilities and hazardous waste facilities.

*See also* Wis. Stat. § 144.445(1)(e), which provides:

> The legislature further finds that whenever a site is proposed for the solid waste disposal or the treatment, storage or disposal of hazardous waste, the nearby residents and the affected municipalities may have a variety of legitimate concerns about the location, design, construction, operation, closing and long-term care of facilities to be located at the site, and that these facilities must be established with consideration for the concerns of nearby residents and the affected municipalities.

656

mine their local affairs and government.[12] But in this case the subject is of statewide concern and local control must yield when it meets any of the tests set forth in *Anchor*: (1) the legislature has expressly withdrawn the power of municipalities to act; (2) the local regulation logically conflicts with state legislation; (3) the local regulation defeats the purpose of state legislation; or (4) the local regulation violates the spirit of state legislation. *Anchor*, 120 Wis. 2d at 397. Applying the *Anchor* tests, we conclude that the City's authority to regulate the plaintiffs' clean fill facility has been preempted.

First, we conclude that the legislature has expressly withdrawn the power of municipalities to act. By providing that certain facilities may be exempted from local approval, the legislature has clearly and expressly withdrawn municipal power to act as to exempt facilities such as the plaintiffs' site. The plain language of the applicable DNR regulations requires this conclusion. Furthermore, any other interpretation of the statute produces absurd results.

The regulations, enacted pursuant to an express legislative grant of authority in Wis. Stat. § 144.44(7)(g), exempt clean fill facility operators from the requirement that they apply for local approvals. If such operators need not even apply for local approvals, we fail to see how, as the City suggests, they could nevertheless be subject to them. It is manifestly absurd

---

[12] Wis. Const. art. XI, § 3(1) provides as follows:

Cities and villages organized pursuant to state law may determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village. The method of such determination shall be prescribed by the legislature.

to instruct a prospective landfill operator that it need not apply to a municipality for permission to open a facility while simultaneously stating that the same municipality's ordinances govern whether and under what conditions the facility can be opened and operated.[13]

We reject the position advanced by both the City and the court of appeals that the regulatory exemption inscribed in Wis. Admin. Code § NR 500.08(2)(a) simply restores the City's pre-existing authority to regulate within the same sphere. The premise support-

---

[13] It is true, as the City pointed out in its brief to the court, that the DNR waste management engineer assigned to the plaintiff's proposed site stated in a letter to the plaintiff's consulting firm that DNR approval "does not relieve [the plaintiffs] of the obligations to meet all other applicable federal, state and local permit, zoning and regulatory requirements." Brief for Respondent at 20. But as the same engineer also noted in his deposition in this case, "I am not a lawyer." Conversely, counsel for the City, who of course is a lawyer, had written a letter of his own to the City's mayor and common council regarding the plaintiff's proposed facility stating that it was his "belief that a court would rule that the DNR's jurisdiction takes precedence over the City's jurisdiction" there.

Were we to assign weight to these respective assessments of the legal issues at stake in this case, the scales would perforce tip against the City. One might expect that a statement made by a lawyer against his client's own perceived interest with regard to the central legal issue in a case is entitled to more weight than a statement made by an engineer. We do not, however, assign weight to either statement. As we have recently stated, "a party should not be bound by any misunderstanding or misapprehension of the law" because "legal concessions, i.e., what is the applicable conclusion of law, is for the judiciary." *Fletcher v. Eagle River Hosp., Inc.*, 156 Wis. 2d 165, 179, 456 N.W.2d 788 (1990).

ing this position is that an exemption from regulation is equivalent to the DNR's forfeiture of jurisdiction and authority. As applied to the statute and regulations at issue in this case, this premise is incorrect.

The DNR promulgated Wis. Admin. Code § NR 500.08(2)(a) pursuant to a statutory mandate that it "conduct a continuing review of the potential hazard to public health or the environment of various types of solid wastes and solid waste facilities." Wis. Stat. § 144.44(7)(g)1. If the DNR then concludes that regulation under Wis. Stat. §§ 144.43 to 144.47 "is not warranted in light of the potential hazard to public health or the environment," it is authorized to exempt from regulation specified types of solid waste facilities. Wis. Stat. § 144.44(7)(g)2.

In making the determination that clean fill facilities do not pose significant hazards to health and are therefore entitled to an exemption under Wis. Stat. § 144.44(7)(g), the DNR has not ceded jurisdiction or authority but has proactively exercised its authority to promulgate rules and regulations rendering that exemption effective. By exempting clean fill facility operators from a negotiation and arbitration procedure that would ordinarily have allowed municipalities to participate in the siting process, the DNR has determined that the comparatively insignificant health risks those facilities pose render unnecessary the negotiation and arbitration procedure, which can be time-consuming and costly.[14]

---

[14] *See* Arthur J. Harrington, *The Right to a Decent Burial: Hazardous Waste and Its Regulation in Wisconsin*, 66 Marq. L. Rev. 223, 269-70 (1983) (describing the negotiation and arbitration process as "long and very expensive" and noting that "it is not inconceivable that the whole process could take as long as

659

Although the City argues otherwise, there is nothing paradoxical about a legislative and regulatory scheme giving municipalities less authority to regulate comparatively innocuous waste facilities than they enjoy over more hazardous facilities posing greater risks to a municipality's residents and environment.

Hence there is no conflict, as the City has suggested, between our decision in *Libby*, 188 Wis. 2d 613, and the decision we reach today. In *Libby*, we held that the Waste Facility Siting Board, which is charged with overseeing the negotiation and arbitration process inscribed in chapter 144, could only veto local ordinances if they were arbitrary on their face or in their application. *Libby*, 188 Wis. 2d at 628.

But as the City itself admits in its brief, *Libby* "is factually distinguishable from this case because it dealt with a licensed and regulated landfill, which was subject to arbitration." Brief for Respondent at 31. Because the plaintiffs' proposed facility does not pose the same potential hazards as those facilities regulated by the procedure under review in *Libby*, it has been exempted from that procedure pursuant to Wis. Stat. § 144.44(7)(g). *Libby* did not address this statutory exemption, and we see no reason to extend its holding regarding the negotiation and arbitration procedure to a facility exempt from that procedure.

Finally, the DNR's continuing regulation of such facilities undermines the City's argument that the DNR has ceded the task of regulating such facilities to the municipalities in which they are located. It is not

___

three to four years before a license is issued for a new disposal site"); *see also* Peter J. Rudd & Dean Werner, *Wisconsin's Landfill Negotiation / Arbitration Statute*, Wis. Bar Bull., Nov. 1985, at 17 (describing the negotiation and arbitration procedure).

correct, as counsel for the City suggested during oral argument, that as a consequence of Wis. Admin. Code § NR 500.08(2)(a), the DNR has ceased regulating clean fill facilities. Rather, the DNR has not only retained the power to regulate clean fill facilities but continues to exercise that power as well.

As the circuit court pointed out, while Wis. Admin. Code § NR 500.08(2)(a) exempts clean fill facility operators from most of the regulatory requirements embodied in chapter 144 and Wis. Admin. Code §§ NR 500 to 522, those facilities must still conform with the requirements of Wis. Admin. Code § NR 504.04(3) and (4), which prohibit solid waste disposal facilities from being sited in certain locations, including areas such as floodplains or areas where a facility might have an adverse effect on wetlands or a detrimental effect on groundwater.

Moreover, the DNR order approving the plaintiffs' establishment of a clean fill facility itself contains numerous provisions regarding how that facility is to be constructed and operated. The order requires the construction of lip berms and a drainage system designed to restrict overflowing water. It specifies that materials only be placed in the landfill following inspection. It requires the plaintiffs to keep a log recording every deposit into the landfill and to make that log available to DNR personnel upon demand. It requires that a contact person be on call 24 hours a day so that the DNR might make unannounced inspections. In his deposition, the DNR waste management engineer charged with overseeing the site estimated that such random inspections could take place almost weekly because there are so many sites in the vicinity of the plaintiffs' facility.

In short, while the DNR may have exempted the plaintiffs' facility from the regulatory scheme inscribed in Wis. Stat. §§ 144.43 to 144.47, it has not, as both the City and the court of appeals suggest, *DeRosso*, 191 Wis. 2d at 61, thereby ceded authority over the facility and restored any pre-existing authority the City might have had to regulate the facility. Instead, the DNR has established an alternative regulatory scheme of its own, designed to insure that the plaintiffs' facility does not compromise the integrity of the environment or the health of the City's residents. In prohibiting the deposit of clean fill at the plaintiffs' site, the City not only thwarts the plaintiffs' plans but also is in direct conflict with the DNR's own regulatory scheme. We therefore conclude that the City's ordinance violates the first of the four tests enunciated in *Anchor*, 120 Wis. 2d at 397.

The City's ordinance also violates the third and fourth *Anchor* tests. It defeats the purpose of state legislation and violates the spirit of the legislature's "complex and comprehensive statutory structure," *Anchor*, 120 Wis. 2d at 397, regulating waste.

In its statement of findings accompanying Wis. Stat. § 144.445 relating to negotiation and arbitration of solid and hazardous waste facilities, the legislature recognized that local authorities have responsibility for promoting public health, safety, convenience and general welfare and that the reasonable decisions of local authorities should be considered in the siting of solid waste disposal facilities. Wis. Stat. § 144.445(1)(f); *see also* Wis. Stat. § 144.445(1)(e). The City's brief places great emphasis on this legislative finding. But this finding mandates that reasonable decisions of local authorities be considered in siting solid waste disposal

facilities; the finding does not state that the decisions of local authorities are controlling. Waste disposal sites, as we all know, are not popular in most communities, and public opposition often takes the form of exclusionary local regulations and ordinances.[15]

The legislature has attempted to ensure that local concerns be considered, while nevertheless recognizing the gravity of statewide concerns. Another of the legislative findings, to which the City does not refer, is "that the availability of suitable facilities for solid waste disposal and the treatment, storage and disposal of hazardous waste is necessary to preserve the economic strength of this state and to fulfill the diverse needs of its citizens." Wis. Stat. § 144.445(1)(d); *see also* Wis. Stat. § 144.445(1)(a) and (b). Considering statewide needs as well as local needs, the legislature has empowered the DNR, a state agency, to act for the good of all the residents of the state. Wisconsin Stat. § 144.44(7)(g) insures that so long as the DNR determines that certain low-hazard waste facilities do not significantly jeopardize the environment or public health, their establishment should not be impeded by local rule or ordinance.

Counsel for the City has expressed concern that "if the DNR alone regulates the filling of the borrow site . . . there will be insufficient monitoring of materials placed in the [landfill]." In light of the DNR's professed intention to monitor and regulate the operation of the plaintiffs' facility, this concern is not warranted and should not be allowed to obstruct a complex and comprehensive statutory structure regulating waste materials.

---

[15] *See* Mary Beth Arnett, *Down in the Dumps and Wasted: The Need Determination in the Wisconsin Landfill Siting Process,* 1987 Wis. L. Rev. 543, 545-46; Harrington, *supra,* at 254.

Because the City ordinance at issue in this case violates the express letter, the purpose and the spirit of statutes addressing a matter of statewide concern, we conclude that state legislation has preempted the City's ordinance.[16] Accordingly we reverse the decision of the court of appeals and remand the cause to the circuit court with directions to reinstate the permanent injunction.

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded to the circuit court with directions.

[16] In their petition for review and brief to the court, the plaintiffs argue that even assuming *arguendo* that Wis. Stat. § 144.44(7)(g) does not preempt the City from regulating the site when viewed as a proposed clean fill facility, the City is nevertheless preempted from regulating the site because of its simultaneous status as a borrow source used to cap a pre-existing solid waste facility. Because that pre-existing solid waste facility is subject to DNR regulation, argue the plaintiffs, the borrow source site—and the restoration of the borrow source site—are subject to DNR regulation as well. Because we conclude that the City's ordinance and resolution conflict with a DNR rule promulgated pursuant to Wis. Stat. § 144.44(7)(g), we need not address this argument.