722 N.W.2d 614 (2006)
2006 WI App 192
APARTMENT ASSOCIATION OF SOUTH CENTRAL WISCONSIN, INC., Plaintiff-Appellant,
v.
CITY OF MADISON, Defendant-Respondent.[]
No. 2005AP3140.
Court of Appeals of Wisconsin.
Oral Argument June 21, 2006.
Opinion Filed August 10, 2006.
*616 On behalf of the plaintiff-appellant, the cause was submitted on the briefs of William F. White, Steven P. Means, and Roisin H. Bell, orally argued by Steven P. Means, Michael Best & Friedrich, L.L.P., Madison.
On behalf of the defendant-respondent, the cause was submitted on the brief of Michael P. May and Katherine C. Noonan, orally argued by Michael P. May, Office of the City Attorney, Madison.
Before VERGERONT, DEININGER and HIGGINBOTHAM, JJ.
¶ 1 VERGERONT, J.
The issue on this appeal is whether a provision of the City of Madison's inclusionary housing ordinance is pre-empted by WIS. STAT. § 66.1015 (2003-04),[1] titled "Municipal rent control prohibited." The Apartment Association of South Central Wisconsin, Inc., (the Association) seeks a declaratory judgment that MADISON, WIS., ORDINANCE (MGO) § 28.04(25)(e)[2] is void with respect to rental dwelling units because it is pre-empted by § 66.1015. The circuit court concluded the statute does not pre-empt the ordinance provision and granted summary judgment in favor of the City. On appeal, the Association renews its argument that MGO § 28.04(25)(e) as it relates to rental dwelling units is pre-empted by § 66.1015 and is therefore void.
¶ 2 We conclude that in WIS. STAT. § 66.1015 the legislature has expressly withdrawn the power of the City to enact MGO § 28.04(25)(e). Therefore, § 66.1015 pre-empts MGO § 28.04(25)(e) and that ordinance provision is void. Accordingly, we reverse the circuit court's summary judgment in the City's favor and remand with instructions to enter summary judgment in the Association's favor.

BACKGROUND

I. The Ordinance
¶ 3 Effective February 15, 2004, the City enacted MGO § 28.04(25), titled "Inclusionary Housing." The stated purpose of the ordinance is "to further the availability of the full range of housing choices for families of all income levels in all areas of the City of Madison." MGO § 28.04(25)(a). This purpose can be accomplished, *617 the ordinance states, "by providing dwelling units for families with annual incomes less than the area median income." Id.
¶ 4 The ordinance requires a development with ten or more rental dwelling units to provide no less than 15% of its total number of dwelling units as inclusionary dwelling units when the development "requires a zoning map amendment, subdivision or land division." MGO § 28.04(25)(c)1.[3] An "inclusionary dwelling unit" as relevant to this appeal is defined as "[a] dwelling unit for rent to a family with an annual median income at or below sixty percent (60%) of the Area Median Income (AMI)...." MGO § 28.04(25)(b). The monthly rental price for rental inclusionary dwelling units "shall include rent and utility costs and shall be no more than thirty percent (30%) of the monthly income for the applicable AMI." MGO § 28.04(25)(e)1.
¶ 5 The ordinance provides that "[i]f requested, the applicant shall receive one or more incentives for providing inclusionary dwelling units or cash in lieu of inclusionary dwelling units. . . ." MGO § 28.04(25)(d)1. The number of "incentive points" for a development is determined by a formula that takes into account the percentage of units provided for families at specific AMI levels and other factors. MGO § 28.04(25)(d)2. Based on the number of points the applicant has, the applicant may then select from a list of "incentives," subject to the approval of the director of the department of planning and development. MGO § 28.04(25)(d)4. Examples of "incentives" are "density bonuses," a reduction in park dedication requirements, and a specified reduction in parking requirements. MGO § 28.04(25)(d)4.a., c., and d.
¶ 6 The city plan commission may waive the requirement to provide inclusionary dwelling units in the development "if the applicant can establish by clear and convincing financial evidence that providing the required inclusionary dwelling units on-site [in the development] shall render providing the required number of affordable dwelling units financially infeasible." MGO § 28.04(25)(c)8.a. However, a developer *618 who obtains a waiver is still subject to certain requirements in order to meet the "requirement to provide inclusionary dwelling units." MGO § 28.04(25)(c)8.b.[4]

II. Procedural History
¶ 7 After the inclusionary housing ordinance was enacted, the Association filed the complaint that initiated this action.[5] The Association is a Wisconsin not-for-profit corporation consisting of rental property owners, developers, fee managers, housing-related nonprofit organizations, suppliers to the industry, and officials and government agencies involved in the rental housing industry. The complaint alleges that MGO § 28.04(25)(e), the provision limiting the rental price for inclusionary dwelling units, seeks to regulate the amount of rent charged for rental units and thus violates WIS. STAT. § 66.1015. This statute provides:
Municipal rent control prohibited. (1) No city, village, town or county may regulate the amount of rent or fees charged for the use of a residential rental dwelling unit.
(2) This section does not prohibit a city, village, town, county, or housing authority or the Wisconsin Housing and Economic Development Authority from doing any of the following:
(a) Entering into a rental agreement which regulates rent or fees charged for the use of a residential rental dwelling unit it owns or operates.
(b) Entering into an agreement with a private person who regulates rent or fees charged for a residential rental dwelling unit.
The complaint seeks a declaratory judgment that MGO § 28.04(25)(e) is illegal and unenforceable.
¶ 8 Both the Association and the City moved for summary judgment. They agreed there were no factual disputes concerning the validity of the ordinance, so the issue presented by their motions was whether MGO § 28.04(25)(e) violates WIS. STAT. § 66.1015. The City's position was that the ordinance does not violate the statute because para. (2)(b) permits it to "enter . . . into an agreement with a private person who regulates rent . . . for a residential dwelling unit." According to the City, MGO § 28.04(25)(e) is an agreement between property owners and the City because it applies only when property owners choose not to develop their land in accordance with existing zoning or land division status and choose instead to seek the benefits of rezoning or land division.[6]
*619 ¶ 9 The circuit court concluded that the City's construction and application of WIS. STAT. § 66.1015(2)(b) were correct. It therefore granted summary judgment in favor of the City and dismissed the complaint.

ANALYSIS
¶ 10 On appeal, the Association contends that the circuit court erred in its construction and application of WIS. STAT. § 66.1015, and that, correctly construed, the statute pre-empts MGO § 28.04(25)(e). The City responds that the circuit court correctly construed the statute and its grant of summary judgment was therefore proper.
¶ 11 We review de novo the grant and denial of summary judgment, employing the same methodology as the circuit court. Green Spring Farms v. Kersten, 136 Wis.2d 304, 314-15, 401 N.W.2d 816 (1987). Summary judgment is proper when there are no issues of material fact and one party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2).
¶ 12 The parties agree there are no issues of material fact. Which party is entitled to judgment as a matter of law depends upon whether WIS. STAT. § 66.1015 pre-empts MGO § 28.04(25)(e), which, in turn, depends upon the proper construction and application of § 66.1015. The issue of whether a state statute pre-empts a city ordinance is a question of law, DeRosso Landfill Co., Inc. v. City of Oak Creek, 200 Wis.2d 642, 652, 547 N.W.2d 770 (1996), as is the issue of the proper construction of a statute and its application to undisputed facts. State v. Tremaine Y., 2005 WI App 56, ¶ 9, 279 Wis.2d 448, 694 N.W.2d 462. We review questions of law de novo. DeRosso, 200 Wis.2d at 652, 547 N.W.2d 770; Tremaine, 279 Wis.2d 448, ¶ 9, 694 N.W.2d 462.
¶ 13 We begin by setting forth the framework for a pre-emption analysis. Article XI, section 3(1) of the Wisconsin Constitution vests in cities and villages the right to "determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village. . . ." In WIS. STAT. §§ 62.04 and 62.11(5),[7] the legislature has given cities broad powers, such that they possess all powers not denied them by the statutes or the constitution. See Wis. Envtl. Decade, Inc. v. DNR, 85 Wis.2d 518, 532-33, 271 *620 N.W.2d 69 (1978). These broad powers include dealing with matters of local affairs that are also matters of statewide concern. Id. at 533, 271 N.W.2d 69. However, a city's ability to regulate matters of state-wide concern is limited. DeRosso, 200 Wis.2d at 651, 547 N.W.2d 770. If the State chooses to legislate on a matter that is of statewide concern, then it pre-empts a local ordinance in each of these four situations: (1) the legislature has expressly withdrawn the power of the municipality to act; (2) the ordinance logically conflicts with the state legislation; (3) the ordinance defeats the purpose of state legislation; or (4) the ordinance violates the spirit of the state legislation. Id. See also Anchor Savings & Loan Ass'n v. City of Madison Equal Opportunities Comm'n, 120 Wis.2d 391, 397, 355 N.W.2d 234 (1984). If any one of these four tests is met, the municipal ordinance is void. DeRosso, 200 Wis.2d at 652, 547 N.W.2d 770.
¶ 14 The City asserts that it enacted the ordinance at issue here pursuant to the zoning powers granted it under WIS. STAT. § 62.23(7)(a). That provides:
(a) Grant of power. For the purpose of promoting health, safety, morals or the general welfare of the community, the council may regulate and restrict by ordinance, subject to par. (hm), the height, number of stories and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, mining, residence or other purposes if there is no discrimination against temporary structures. This subsection and any ordinance, resolution or regulation enacted or adopted under this section, shall be liberally construed in favor of the city and as minimum requirements adopted for the purposes stated. This subsection may not be deemed a limitation of any power granted elsewhere.
The City's authority to enact zoning regulations for the purposes of promoting the health, safety, morals and the general welfare of the community is broad, and the concept of the general welfare of the community in particular is broad and inclusive. See Step Now Citizens Group v. Town of Utica Planning and Zoning Committee, 2003 WI App 109, ¶¶ 26, 31, 264 Wis.2d 662, 663 N.W.2d 833. The Association does not argue that the ordinance provision at issue here is invalid for any reason other than it conflicts with WIS. STAT. § 66.1015. We take this as a concession that the ordinance provision comes within the broad powers granted to the City under WIS. STAT. §§ 62.04, 62.11(5) and 62.23(7), subject to the limitation of pre-emption by state legislation.
¶ 15 Although neither party discusses whether WIS. STAT. § 66.1015 is a statute of statewide concern, the City's reference to Anchor Savings, 120 Wis.2d 391, 355 N.W.2d 234, as setting forth the applicable pre-emption analysis indicates that the City believes the statute is a matter of statewide concern, and the Association's argument presumes that it is. Therefore, in this case whether § 66.1015 pre-empts MGO § 28.04(25)(e) depends upon whether any one of the four tests in paragraph 13, supra, are met. Answering this question requires a resolution of the parties' dispute over the proper construction and application of the statute, and we turn to that issue now.
¶ 16 When we construe a statute, we begin with the language of the statute and give it its common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or special definitions. State ex rel. Kalal v. *621 Circuit Court for Dane County, 2004 WI 58, ¶ 45, 271 Wis.2d 633, 681 N.W.2d 110. We interpret statutory language in the context in which it is used, not in isolation but as part of a whole, in relation to the language of surrounding or closely related statutes, and we interpret it reasonably to avoid absurd or unreasonable results. Id., ¶ 46. We also consider the scope, context, and purpose of the statute insofar as they are ascertainable from the text and structure of the statute itself. Id., ¶ 48. If this process of analysis yields a plain meaning, then there is no ambiguity and we apply that plain meaning. Id., ¶ 46.
¶ 17 The structure of WIS. STAT. § 66.1015 is that the first subsection contains a prohibition on the listed governmental entities "regulat[ing] the amount of rent or fees charged for the use of a residential rental dwelling unit"; and the second subsection describes two situationsboth involving entering into agreementsthat are not prohibited by the statute. The City acknowledges that subsec. (1) "contains an express withdrawal of power that would preempt the City from adopting the Ordinance . . . if the legislature had not provided the exceptions in § 66.1015(2)." The City agrees with the Association that para. (2)(a) does not apply to the ordinance: this subsection concerns only residential rental dwelling units that the City "owns or operates." (Emphasis added.) The parties' dispute centers on the meaning and application of para. (2)(b): "[e]ntering into an agreement with a private person who regulates rent or fees charged for a residential rental dwelling unit."
¶ 18 The Association argues in its appellate briefs that WIS. STAT. § 66.1015(2)(b) plainly applies only to agreements with private persons who, on their own, choose to regulate rent and makes clear that a municipality is not imposing rent control if it contracts with those persons "for some other purpose or somehow assists [them]." The Association points out that the language used is "an agreement with a private person who regulates rent," not an agreement with a person "to regulate rent." However, at oral argument, the examples the Association gave of the agreements contemplated by para. (2)(b) included agreements whereby the City makes a loan or provides TIF[8] funds to private entities who in return agree to place limits on the rents they charge. This appears to be a different construction than advanced in the Association's briefs. But both in its briefs and at oral argument the Association is very clear that its position is that MGO § 28.04(25)(e) is plainly not an "agreement" within the meaning of § 66.1015(2)(b). Instead, according to the Association, this ordinance provision is an imposition of rent control by regulation, which is plainly prohibited by subsec. (1).[9]
¶ 19 The City's position is that the language "[e]ntering into an agreement with a private person who regulates rent" plainly *622 means entering into an agreement with a private person under which that person is obligated to regulate rent. According to the City, MGO § 28.04(25)(e) plainly is an agreement within the meaning of para. (2)(b).
¶ 20 We first consider whether the language in WIS. STAT. § 66.1015(2)(b) means that the agreement with the private person is an agreement under which the private person regulates rent or, instead, is an agreement on another subject with a person who regulates rent independent of the agreement.
¶ 21 While the rules of grammar might indicate that "who regulates rent" modifies person and has nothing to do with the "agreement," we conclude this is not a reasonable construction of WIS. STAT. § 66.1015(2)(b). It is not reasonable to read subsec.(1) as prohibiting a municipality from entering into an agreement on any subject with a private person simply because that person "regulates rent. . . ." Thus, we can see no reason why the legislature would say in para. (2)(b) that this is not prohibited. In addition, as we have already mentioned, the examples of para. (2)(b) that the Association gave at oral argument involved agreements under which private persons agree to limit the rent they charge as consideration for benefits they obtain under the agreement. Counsel for the Association candidly acknowledged that he could not think of other examples of what the language might mean.
¶ 22 We conclude the only reasonable construction of WIS. STAT. § 66.1015(2)(b) is that the designated entities are not prohibited from entering into an agreement with a private person whereby that person agrees to regulate rent. Our next inquiry is whether MGO § 28.04(25)(e) is an agreement to regulate rent between the City and persons who apply for zoning map amendments, subdivision or land division in order to develop their property with ten or more rental dwelling units.
¶ 23 In order to establish the common meaning of words when construing a statute, we may consult a dictionary. State v. Sample, 215 Wis.2d 487, 499-500, 573 N.W.2d 187 (1998). When words have a legal meaning, it is appropriate to consult Black's Law Dictionary. See State v. Ellis H., 2004 WI App 123, ¶ 15, 274 Wis.2d 703, 684 N.W.2d 157. The phrase "entering into an agreement" connotes that the agreement is a transaction with legal significance, and the City's definition of "agreement" from Black's Law Dictionary is therefore appropriate: "mutual understanding between two or more persons about their relative rights and duties regarding past or future performances; a manifestation of mutual assent by two or more parties." BLACK'S LAW DICTIONARY 74 (7th ed. 1999).
¶ 24 We agree with the Association that MGO § 28.04(25)(e) is plainly not a "mutual understanding" or a "manifestation of mutual assent" between the City and applicants. It is plainly a regulation that imposes a requirement on all applicants for zoning map amendments, subdivisions or land divisions that, in order to develop property with ten or more rental dwelling units, they must charge no more than a specified amount of rent for no less than a specified percentage of rental dwelling units.
¶ 25 The City makes a number of arguments in support of its position that MGO § 28.04(25)(e) is an agreement with persons who apply for zoning map amendments, subdivisions or land divisions in order to develop their property with ten or more rental dwelling units. However, we find none of them persuasive.
*623 ¶ 26 The City first argues that every agreement by its nature contains some provisions that a party wants in the agreement and some provisions that a party would not choose but assents to only because the other party insists. That is no doubt true, but it does not explain why the requirement in MGO § 28.04(25)(e) is an agreement. The City is using its regulatory power to impose that requirement on property owners in the specified situations. The City's argument that there is an "agreement" as to this requirement because property owners can choose not to develop their land in ways that need a zoning map amendment, subdivision or land division, or can choose to have less than ten rental dwelling units, does not comport with the commonly understood meaning of "mutual understanding" or "mutual assent." Under the City's meaning, in every instance that the City issues a license or permit or grants approval of any kind for which conditions are imposed by ordinance, the City is "entering into an agreement" with the applicants as to those conditions, because the applicants could choose not to engage in the activity for which conditions are imposed. This is not a reasonable construction of the phrase.
¶ 27 It is also true, as the City argues, that property owners do not have an unlimited right to develop their property as they choose but can be required to comply with zoning regulations or specific conditions that are based on the general welfare of the community. See, e.g., Buhler v. Racine County, 33 Wis.2d 137, 148, 146 N.W.2d 403 (1966), and Zealy v. City of Waukesha, 201 Wis.2d 365, 381, 548 N.W.2d 528 (1996). However, it does not logically follow that property owners are therefore agreeing to MGO § 28.04(25)(e). Rather, that provision is a requirement the City has imposed on property owners using its authority to regulate for the general welfare of the community. The issue in this case is not whether property owners have a right to be free from that requirement but whether WIS. STAT. § 66.1015 pre-empts the City from enacting it.
¶ 28 The City contends that the targeted nature of MGO § 28.04(25)(e) makes it an agreement between the City and the applicants. The fact that there are many landlords to whom this ordinance provision does not apply does not alter the fact that, as to those persons to whom it does apply, the City is imposing by regulation a requirement that limits the amount of rent they can charge in a specified number of units.
¶ 29 Nor does the availability of incentive points in MGO § 28.04(25)(d) make MGO § 28.04(25)(e) an agreement. The incentive points for the required number of inclusionary dwelling units are not incentive points within the common meaning of the word "incentive:"[10] they do not induce or motivate applicants to provide the required number of inclusionary dwelling units for the simple reason that the applicants have no choice as to that. The incentive points available for providing a greater number of inclusionary dwelling units than required are truly incentive points; and perhaps one might reasonably say that an applicant is agreeing to provide a greater number in exchange for more incentive points. However, it is not reasonable to say that an applicant is agreeing to provide the required number of inclusionary dwelling units in exchange for incentive points when an applicant does not have the option of declining the related *624 incentive points and not complying with MGO § 28.04(25)(e).
¶ 30 Finally, the waiver provision does not make MGO § 28.04(25)(e) an agreement. This provision gives the City the authority to reduce the requirement of MGO § 28.04(25)(e) or impose substitutes if the applicant makes the requisite showing. MGO § 28.04(25)(c)(8). This provision makes the requirement less onerous for those applicants who the City decides qualify for a waiver, but it does not create an agreement between the City and those applicants; nor does it alter the fact that the requirement of MGO § 28.04(25)(e) is imposed on all other applicants who meet the criteria in MGO § 28.04(25)(c)1.
¶ 31 The City also contends that MGO § 28.04(25)(e) is consistent with the scope, context and purpose of WIS. STAT. § 66.1015(2) and related statutes. First, the City points out that subsec. (2) includes not just municipalities, as does subsec. (1), but also housing authorities and the Wisconsin Housing and Economic Development Authority (WHEDA), whose purposes include providing housing and other services to low and moderate income families. See WIS. STAT. §§ 66.1201(2); 234.03(8), (9), (10), (15), and (15m). Because the purpose of the ordinance as stated in MGO § 28.04(25)(a) is consistent with the purposes of those authorities, the City asserts, MGO § 28.04(25)(e) is consistent with the purposes of those authorities.
¶ 32 The City's argument ignores the significant language in WIS. STAT. § 66.1015(2)(a) and (b) of "entering into a rental agreement . . ." and "entering into an agreement . . .," respectively. When we consider the scope, context and purpose of the statute as expressed in the text of the statute, we do not view words in isolation but consider the language of the statute as a whole. See Kalal, 271 Wis.2d 633, ¶ 46, 681 N.W.2d 110. Thus, the addition of "housing authority" and "[WHEDA]" to subsec. (2) expresses the legislature's intent to permit these entities to fulfill their purpose of making housing available to low and moderate income families by entering into the agreements described in paras. (2)(a) and (b). Similarly, the language of subsec. (2) shows the legislature's intent to permit municipalities to further the goal of making available affordable housing for people with low and moderate incomes by entering into the agreements described in paras. (2)(a) and (b). On the other hand, the language in subsec. (1) plainly prohibits municipalities from "regulat[ing] the amount of rent . . ." even if the purpose of doing so is to make available affordable housing to persons of low and moderate incomes. In other words, in § 66.1015(1) the legislature has expressly withdrawn from municipalities the option of "regulat[ing] the amount of rent ..." as a means of making affordable housing available; while in § 66.1015(2) the legislature has permitted (not prohibited) municipalities and housing authorities to enter into the agreements described as a means of making affordable housing available.
¶ 33 The City's argument based on other statutes has a similar analytical deficiency in that it overlooks the plain language of WIS. STAT. § 66.1015 in favor of the purposes expressed in more generally worded statutes. The City first points to the requirement in WIS. STAT. § 62.23(2) and (3) that cities must adopt a master plan containing certain elements, among them a "housing element." WIS. STAT. § 66.1001(2)(b). This element
. . . shall . . . identify specific policies and programs that promote the development of housing for residents of the local governmental unit and provide a range of housing choices that meet the needs of persons of all income levels and *625 of all age groups and persons with special needs, policies and programs that promote the availability of land for the development or redevelopment of low-income and moderate-income housing, . . . .
We agree that requiring this element in a master plan expresses the legislature's intent that cities take steps to make affordable housing available to persons of low and moderate income. However, while a city's regulation of the amount of rent charged for residential dwelling units might otherwise be a policy or program that fulfills this element, the legislature has expressly prohibited such regulation in § 66.1015(1). At the same time, the agreements expressly permitted (not prohibited) in subsec. (2) are options for cities to employ to fulfill the housing element of their master plans.
¶ 34 The City also refers to WIS. STAT. §§ 1.13(2)(i)[11] and 16.965(4)(b)9,[12] both of which express a legislative policy of encouraging local governments to provide an adequate supply of affordable housing for persons of all income levels. However, local governments may not choose a means of achieving that goal that is prohibited by WIS. STAT. § 66.1015.
¶ 35 In summary, we conclude that in WIS. STAT. § 66.1015(1) the legislature has expressly withdrawn the power of the City to enact MGO § 28.04(25)(e) because this ordinance provision regulates the amount of rent that property owners in the specified circumstances may charge for rental dwelling units. We also conclude that MGO § 28.04(25)(e) is not permitted by § 66.1015(2)(b) because this ordinance provision is plainly not an "agreement" with the property owners to whom it applies. Accordingly, in § 66.1015 the legislature has expressly withdrawn the power of the City to enact MGO § 28.04(25)(e).
¶ 36 We recognize, as did the DeRosso court in deciding there was pre-emption in another context, the importance of the City's local concerns and the goals it is attempting to achieve in MGO § 28.04(25). See DeRosso, 200 Wis.2d 642, 547 N.W.2d 770. However, where the subject is of state-wide concern, local control must yield when any one of the four tests set forth in paragraph 13, supra, are met. See DeRosso, 200 Wis.2d at 657, 547 N.W.2d 770. Because we have determined that the first test has been met as to MGO § 28.04(25)(e)the legislature's express withdrawal of the power of municipalities to actthis provision of the ordinance is void. See id. at 652, 547 N.W.2d 770.
¶ 37 We reverse the circuit court's order granting summary judgment in the City's favor and remand with instructions to enter summary judgment in the Association's favor declaring that MGO § 28.04(25)(e) is *626 void because it is pre-empted by WIS. STAT. § 66.1015.
Order reversed and cause remanded with directions.

NOTES
[] Petition for review filed.
[1] All references to the Wisconsin Statutes are to the 2003-04 version unless otherwise noted.
[2] MADISON, WIS., ORDINANCE (MGO) § 28.04(25) became effective February 15, 2004. The Association's appendix contains a version of MGO § 28.04 in effect on November 2, 2005. The City does not provide another version in its appendix and does not argue that we should not use the version in effect on November 2, 2005. Therefore, that is the version we use.

At oral argument, in response to questions from this court, the parties advised us that the Madison Common Council was considering amendments to MGO § 28.04. The parties agreed that, if passed, the amendments would not affect this appeal. Subsequently, the City filed a motion requesting that we take judicial notice that the Madison Common Council adopted the amendments on July 11, 2006. The motion did not state that the amendments affected this appeal in any way or affected any of the arguments made by the parties. Accordingly, we grant the motion insofar as we take judicial notice that the ordinance was amended on July 11, 2006, but we do not consider the amendments on this appeal.
[3] MADISON, WIS., ORDINANCE § 28.04(25)(c)1 provides in full:

(c) Provision of Inclusionary Dwelling Units.
1. Rental. All development as defined in Sec. 28.03(2), with ten (10) or more rental dwelling units on one or more contiguous parcels that requires a zoning map amendment, subdivision or land division, shall provide a number of inclusionary dwelling units equal to no less than fifteen percent (15%) of the total dwelling units in the development.
Notwithstanding the above:
a. Development that contains only rental dwelling units financed by Section 42 low income housing tax credit shall not be subject to this ordinance.
b. Development with at least fifteen percent (15%) rental dwelling units financed by Section 42 low income housing tax credit and/or qualified housing revenue bonds and in which those dwelling units are dispersed throughout the development per Subdivision (g)6 of this ordinance, shall not be subject to this ordinance.
c. Development that contains fewer than fifteen percent (15%) rental dwelling units financed by Section 42 low income housing tax credit and/or qualified housing revenue bonds are subject to this ordinance and the number of rental dwelling units receiving low income tax credits that count toward the total number of inclusionary dwelling units required shall depend on the dispersion of the inclusionary dwelling units in the development per Subdivision (g)6[.]
The ordinance also imposes requirements for inclusionary dwelling units on owner-occupied dwelling units and other residential occupancy dwelling units. MGO § 28.04(25)(c)2. and 3. However, the Association made clear at oral argument that this action challenges MGO § 28.04(25)(e) only insofar as it affects rental dwelling units.
[4] The waiver provision in MGO § 28.04(25)(c)8.a. and b. provides:

8. Waiver.
a. The Plan Commission may waive the requirement to provide inclusionary dwelling units on-site (in the development) if the applicant can establish by clear and convincing financial evidence that providing the required inclusionary dwelling units on-site shall render providing the required number of affordable dwelling units financially infeasible.
b. If a waiver is granted, the requirement to provide inclusionary dwelling units shall be met by providing some or all of the inclusionary dwelling units off-site by assigning the obligation to provide some or all of the inclusionary dwelling units to another person, by making a payment into the Inclusionary Zoning Special Revenue Fund, or any combination of the above. (Am. by ORD-05-00054, 3-15-05)
[5] Prior to filing the complaint, the Association filed a "Notice of Claim and Claim" pursuant to WIS. STAT. § 893.80(1)(b), alleging MGO § 28.04(25)(e) was illegal rent control and alleging the ordinance caused the Association and its constituent members damage in an amount "currently not ascertainable, but . . . not less than $50,000." The common council disallowed the claim.
[6] The City also moved for summary judgment on the ground that the Association lacked standing and that the controversy was not ripe. The circuit court concluded the Association had standing to bring the action and the controversy was ripe. The City does not appeal these conclusions.
[7] WISCONSIN STAT. § 62.04 provides:

Intent and construction. It is declared to be the intention of the revision of the city charter law, to grant all the privileges, rights and powers, to cities which they heretofore had unless the contrary is patent from the revision. For the purpose of giving to cities the largest measure of self-government compatible with the constitution and general law, it is hereby declared that ss. 62.01 to 62.26 shall be liberally construed in favor of the rights, powers and privileges of cities to promote the general welfare, peace, good order and prosperity of such cities and the inhabitants thereof.
WISCONSIN STAT. § 62.11(5) provides:
(5) POWERS. Except as elsewhere in the statutes specifically provided, the council shall have the management and control of the city property, finances, highways, navigable waters, and the public service, and shall have power to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public, and may carry out its powers by license, regulation, suppression, borrowing of money, tax levy, appropriation, fine, imprisonment, confiscation, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants, and shall be limited only by express language.
[8] TIF means "tax incremental financing." See WIS. STAT. § 66.1105.
[9] Both in its briefs and at oral argument, the Association contends that it is significant that WIS. STAT. § 66.1015(2) does not begin with the words "notwithstanding subsection 1" but instead begins "this section does not prohibit ... the following." According to the Association, the chosen language means that the two situations in subsec. (2) are not rent control; the language does not mean that they are rent control but are exceptions to the prohibition. We are unable to see how this distinction aids in construing the statute. Whether subsec. (2) contains a clarification of what is not rent control or exceptions to the prohibition on rent control, the legislature has plainly chosen not to prohibit the activities described in this subsection, and our task is to determine what the legislature intended not to prohibit in para. (2)(b).
[10] THE AMERICAN COLLEGE HERITAGE DICTIONARY 686 (3rd ed. 1993) defines the adjective "incentive" as "[s]erving to induce or motivate."
[11] WISCONSIN STAT. § 1.13(2)(i) provides:

(2) Each state agency, where applicable and consistent with other laws, is encouraged to design its programs, policies, infrastructure and investments of the agency to reflect a balance between the mission of the agency and the following local, comprehensive planning goals:
. . . .
(i) Providing an adequate supply of affordable housing for individuals of all income levels throughout each community.
[12] WISCONSIN STAT. § 16.965(4)(b)9. provides:

(4) In determining whether to approve a proposed grant, preference shall be accorded to applications of local governmental units that contain all of the following elements:
. . . .
(b) Planning efforts that contain a specific description of the means by which all of the following local, comprehensive planning goals will be achieved:
. . . .
9. Providing an adequate supply of affordable housing for individuals of all income levels throughout each community.