SCENIC PIT LLC,
Plaintiff-Appellant,

v.

VILLAGE OF RICHFIELD and Jim Healy,
Defendants-Respondents.†

Court of Appeals

*No. 2015AP2291. Oral argument August 17, 2016.
—Decided June 28, 2017.*

2017 WI App 49

† Petition for Review Filed.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of and orally argued by *Bruce A. McIlnay* of *McIlnay Button Law LLC* of Grafton.

On behalf of the defendants-respondents, the cause was orally argued by *Joseph M. Wirth* and submitted on the brief of *Joseph M. Wirth* and *Joseph M. Mirabella* of *Piper, Schmidt & Wirth* of Milwaukee.

Before Neubauer, C.J., Reilly, P.J., and Hagedorn, J.

¶ 1. HAGEDORN, J. The siting of landfills is, understandably, often fraught with controversy. In response, the State of Wisconsin has seen fit to pre-empt local neighborly battles for the common good by establishing a statewide landfill regulatory scheme. This case concerns the scope of that statewide scheme for solid waste facilities exempt from regulation under Wis. Stat. § 289.43(8) (2015–16)[1]—clean fill facilities—vis-à-vis a municipality's zoning powers and certain other local construction permitting requirements.

---

[1] All references to the Wisconsin Statutes are to the 2015–16 version unless otherwise noted.

¶ 2. Scenic Pit LLC sought to open a clean fill facility in the Village of Richfield. The Village maintains that a clean fill facility may not be opened and operated at the site Scenic wishes to use because it is not zoned for such activities, and because Scenic must, as a prerequisite, comply with local construction storm water and erosion permitting requirements as well. Scenic, relying on *DeRosso Landfill Co. v. City of Oak Creek*, 200 Wis. 2d 642, 547 N.W.2d 770 (1996), maintains that the Wisconsin Department of Natural Resources (DNR) has—pursuant to state statute and the administrative rules promulgated thereunder—exempted clean fill facilities from the local approvals identified by the Village, namely, zoning and certain construction storm water and erosion permitting requirements. We agree with Scenic and reverse the circuit court's order granting summary judgment to the Village.

## BACKGROUND

¶ 3. Thomas and Danah Zoulek founded Scenic Pit LLC for the purpose of operating a solid waste facility. In October 2014, the Zouleks (through a separate LLC) accepted an offer contingent on financing to purchase an abandoned gravel pit in the Village of Richfield. In the days following, Thomas Zoulek contacted the Village and expressed his desire to use the gravel pit for a "clean fill" facility—a landfill that accepts only certain kinds of low hazard waste under Wis. Stat. § 289.43(8). The Village told Zoulek that current zoning prevented the property from being so used.[2] Scenic disagreed and argued that current zoning allowed quarry restoration, which included using

[2] The landfill proposal became public and generated significant opposition among the residents of Richfield. Some of the residents formed an organization that attempted to inter-

the property for clean fill. That dispute became moot, however, when the Village passed an ordinance rezoning the property to Rs-1—a designation the parties agree conclusively prohibits use as a landfill, clean or otherwise.

¶ 4. Scenic sought to move forward with the project anyway. It sent a letter to the Village on March 3, 2015 requesting specification of any local approvals it needed to operate the property as a landfill. The Village responded with a list of requirements—among them, amending the Village's comprehensive plan, rezoning the property, applying for a conditional use permit, and obtaining construction storm water and erosion permits along with approval from the Village engineer for "an erosion and sediment control plan." Undeterred, the Zouleks purchased the site of their proposed landfill on May 21, 2015. That same day, the Village board met and passed a resolution "directing the Village Attorney to take any and all measures" to ensure that Scenic complied with zoning and other local approvals. Scenic subsequently sought construction permits from the Village to begin the landfill project, but it did not attempt to acquire the storm water and erosion permits or a change in zoning. The Village denied the construction permits. In order to comply with WIS. STAT. ch. 283 and WIS. ADMIN. CODE ch. NR 216 (Jan. 2017),[3] Scenic did apply for and obtain a Wisconsin Pollution Discharge Elimination System

vene in this present suit—Richfield Residents Against Dump LLC. The residents stated their purpose was to "prevent the establishment of a dump in their neighborhood." The Village echoed the residents' concerns and expressed misgivings about the aesthetic and environmental impact of the proposed landfill.

[3] All references to the Wisconsin Administrative Code are to the January 2017 version unless otherwise noted.

(WPDES) general permit from DNR for "Construction Site Storm Water Runoff" and erosion control.[4]

¶ 5. In light of the opposition, Scenic filed this action seeking a declaratory judgment that it need not comply with any local approvals—specifically, the Village's zoning and construction storm water and erosion control ordinances—and a permanent injunction "restraining the Village from interfering with plaintiff's proposed plan."[5] Scenic moved for partial summary judgment on whether it was "required to obtain any local approvals, as defined in [Wis. Stat.] § 289.33(3)(d)." The Village also moved for summary judgment and sought dismissal of the complaint. The circuit court denied Scenic's motion and ordered summary judgment be granted in favor of the Village. The court reasoned that per *Willow Creek*,[6] discussed later in this opinion, Scenic must comply with all local ordinances unless "state and local interests are diametrically opposed." Because the Village's zoning and storm water and erosion ordinances were not diametrically opposed to the state interests, the court concluded that Scenic remained subject to these requirements. Scenic appeals from this order.

---

[4] Wisconsin Stat. § 283.35(1) provides that "[i]nstead of issuing a separate permit to an individual point source, the department may issue a general permit applicable to a designated area." A point source is "a discernible, confined and discrete conveyance of storm water for which a permit is required under [Wis. Stat. §] 283.33," like a municipal storm sewer. Wis. Admin. Code § NR 216.002(22).

[5] The complaint also requested a writ of mandamus directing the Village to issue the construction permits it requested. Scenic named the Village Administrator, Jim Healy, as a defendant as well. For ease of reading, we will refer to the Village and Healy collectively as the Village.

[6] *Willow Creek Ranch, LLC v. Town of Shelby*, 2000 WI 56, 235 Wis. 2d 409, 611 N.W.2d 693.

## DISCUSSION

¶ 6. We review the circuit court's grant or denial of summary judgment de novo. *Romero v. West Bend Mut. Ins. Co.*, 2016 WI App 59, ¶ 17, 371 Wis. 2d 478, 885 N.W.2d 591. Summary judgment is appropriate when there are no disputed material facts and the moving party is entitled to judgment as a matter of law. *Id.*

¶ 7. The issue before us is whether Scenic is exempt from compliance with "local approvals" as defined in Wis. Stat. § 289.33(3)(d), and whether the Village's zoning and construction storm water and erosion ordinances are such local approvals. Whether the court properly denied Scenic's motion for summary judgment depends on construing various statutes and regulations to determine whether they preempt the Village's zoning ordinance and storm water and erosion regulations. These are questions of law we review de novo. *DeRosso*, 200 Wis. 2d at 652. We hold, consistent with *DeRosso*, that Scenic need not comply with the Village's zoning and construction storm water and erosion requirements because the legislature has expressly withdrawn the Village's power to act.

¶ 8. The legislature has designated the regulation of solid waste facilities like the one proposed by Scenic a matter of statewide concern, and therefore appropriate for a statewide regulatory scheme.[7] Wis.

---

[7] The legislature saw fit to add an unusually extensive list of legislative findings motivating the statewide regulatory scheme here. Among the highlights, the legislature notes that solid and hazardous waste is unavoidable and used by everyone, Wis. Stat. § 289.33(1)(a), (b), but that it often raises

STAT. § 289.33(3)(c), (5)(a); *DeRosso*, 200 Wis. 2d at 650. However, this designation does not necessarily foreclose local action. A municipality may regulate matters of statewide concern so long as "such ordinances do not conflict with . . . the state legislation." *DeRosso*, 200 Wis. 2d at 651. Ordinances that conflict are preempted by state law. *Id.* An ordinance is preempted when any of the following four tests are satisfied: (1) the legislature has expressly withdrawn the power of the municipality to act, (2) the ordinance logically conflicts with state legislation, (3) the ordinance defeats the purpose of state legislation, or (4) the ordinance violates the spirit of state legislation. *Anchor Sav. & Loan Ass'n v. Equal Opportunities Comm'n*, 120 Wis. 2d 391, 397, 355 N.W.2d 234 (1984); *see also DeRosso*, 200 Wis. 2d at 651–52. Thus, the preemption question is generally one that must be answered with regard to the unique statutory scheme at issue.

¶ 9. The solid waste regulatory scheme prescribes a robust and comprehensive process involving state and local authorities for the siting and construction of solid waste facilities. Before establishing a solid waste facility, an applicant must file an initial site

legitimate concerns by neighbors, § 289.33(1)(e); siting of these facilities should include the views of local authorities, § 289.33(1)(f); and current processes were "not adequate to resolve many of the conflicts which arise during the process of establishing such facilities," § 289.33(1)(g). *See* § 289.33(1).

In view of these things, the legislature indicates their intent was to create a comprehensive policy overseeing solid waste disposal and hazardous waste facilities to avoid "[a]rbitrary or discriminatory policies and actions of local governments which obstruct the establishment of solid waste disposal facilities and hazardous waste facilities," all the while considering the views of local citizens and protecting the environment in an economically viable way. *See* WIS. STAT. § 289.33(2).

287

report with DNR and request an itemized list of local approvals from the affected municipality. *See* WIS. STAT. §§ 289.21 & 289.22(1m). After the request for local approvals, the affected municipalities may—by adopting a siting resolution—choose to participate in a process of negotiation and arbitration overseen by the waste facility siting board. *See* WIS. STAT. § 289.33(6). If a siting resolution is passed, then negotiation begins between the applicant and a "local committee" made up of various affected municipalities. Sec. 289.33(7), (9). If this process fails to yield an agreement, then the parties may arbitrate the matter before the waste facility siting board. Sec. 289.33(10). In addition to the above procedure, the applicant must file a feasibility report and a plan of operation with DNR. WIS. STAT. §§ 289.23 & 289.30. After an applicant jumps through all of the preceding hoops, DNR then issues an operating license. WIS. STAT. § 289.31(1), (3).[8] Our supreme court observed that this may be an expensive process that can take years. *See DeRosso*, 200 Wis. 2d at 659 n.14.

¶ 10. However, the legislature has given DNR discretion to exempt certain low-hazard waste facilities—i.e., clean fill facilities like the one proposed by Scenic—from this more exacting regulation. *See* WIS. STAT. § 289.43(8); *see also DeRosso*, 200 Wis. 2d at 653 (explaining that the predecessor statute to § 289.43 "authorizes the DNR to exempt low-hazard waste facilities" from certain statutory and regulatory

---

[8] WISCONSIN STAT. § 289.31(3) provides that a license "shall not be issued unless the facility has been constructed in substantial compliance with the operating plan approved under [WIS. STAT. §] 289.30." Section 289.30(2) provides that a plan of operation may not be approved unless the applicant first submits a feasibility report.

requirements).[9] Pursuant to this statutory authority, DNR promulgated WIS. ADMIN. CODE § NR 500.08 exempting operators of clean fill facilities from compliance with "the requirements of [WIS. ADMIN. CODE] chs. NR 500 to 538." Among the exempted provisions is the requirement in WIS. ADMIN. CODE § NR 512.06(1) to "apply for all applicable local approvals specified by a municipality." *See DeRosso*, 200 Wis. 2d at 653 & n.10. The scope of "local approval" as defined in WIS. STAT. § 289.33(3)(d) is addressed below.

¶ 11. Whether WIS. STAT. § 289.43(8) coupled with DNR regulations expressly withdraws the power of municipalities to require compliance with "local approvals" (as defined) for clean fill facilities was squarely addressed by the supreme court in *DeRosso*. The answer is yes.

¶ 12. In *DeRosso*, the plaintiffs sought to open a clean fill facility in the City of Oak Creek. *DeRosso*, 200 Wis. 2d at 647–48. DNR approved the plaintiffs' proposal. *Id.* However, citing environmental concerns, Oak Creek passed a resolution forbidding the operation of a clean fill facility. *Id.* As here, the plaintiffs sought a declaratory judgment and an injunction "restraining the City from interfering with the proposed plan." *Id.* at 649.

---

[9] WISCONSIN STAT. § 289.43(8) provides the following:

(a) The department shall conduct a continuing review of the potential hazard to public health or the environment of various types of solid wastes and solid waste facilities . . . .

(b) If the department, after a review under par. (a), finds that regulation under this chapter is not warranted in light of the potential hazard to public health or the environment, the department shall either:

1. Promulgate a rule specifying types of solid waste that need not be disposed of at a licensed solid waste disposal facility.

¶ 13. Applying the *Anchor* tests, the Wisconsin Supreme Court held that Wis. Stat. § 289.43 preempted municipal authority to enforce "local approval" requirements for clean fill facilities. *DeRosso*, 200 Wis. 2d at 662. The court noted that this was an exempt clean fill facility under § 289.43(8). *DeRosso*, 200 Wis. 2d at 657. Its statutory analysis was as follows:

> With limited exceptions which are not applicable here, Wis. Admin. Code § NR 500.08 exempts clean fill facilities from compliance with Wis. Admin. Code §§ NR 500 to [538]. Consequently, an applicant seeking DNR approval for a clean fill facility is exempt from Wis. Admin. Code § NR 512.06(1), which states that "[a]n applicant subject to [Wis. Stat. § 289.33] shall apply for all applicable local approvals specified by a municipality under [Wis. Stat. § 289.22(1m)]."
>
> Wisconsin Stat. § [289.22(1m)] requires, in pertinent part, that "[p]rior to constructing a solid waste disposal facility or a hazardous waste facility, the applicant shall apply for each local approval required to construct the waste handling portion of the facility."

*DeRosso*, 200 Wis. 2d at 653 n.10.[10] The exemption in § NR 500.08 did not, the court explained, simply restore the City's preexisting authority "to regulate within the same sphere." *Id.* at 658.

> By providing that certain facilities may be exempted from local approval, the legislature has clearly and

---

[10] *DeRosso* construed Wis. Stat. §§ 144.44 and 144.445 (1993–94) and the corresponding regulations. *DeRosso Landfill Co. v. City of Oak Creek*, 200 Wis. 2d 642, 547 N.W.2d 770 (1996). These provisions are substantively identical to Wis. Stat. §§ 289.43, 289.33, and 289.22 (2013–14), and the current regulations. For ease of reading, we have changed the statutory cites to the current versions.

expressly withdrawn municipal power to act as to exempt facilities such as the plaintiffs' site . . . .

The regulations, enacted pursuant to an express legislative grant of authority in WIS. STAT. § [289.43(8)], exempt clean fill facility operators from the requirement that they apply for local approvals. If such operators need not even apply for local approvals, we fail to see how, as the City suggests, they could nevertheless be subject to them . . . .

. . . .

In making the determination that clean fill facilities do not pose significant hazards to health and are therefore entitled to an exemption under WIS. STAT. § [289.43(8)], the DNR has not ceded jurisdiction or authority but has proactively exercised its authority to promulgate rules and regulations rendering that exemption effective.

*DeRosso*, 200 Wis. 2d at 657–59. Thus, the court concluded that § 289.43(8) and § NR 500.08 preempted the City's ordinance under the first *Anchor* test by expressly withdrawing municipal power to require compliance with local approvals required to construct the clean fill facility.[11] *DeRosso*, 200 Wis. 2d at 657–69.

¶ 14.　At oral argument, the Village more or less conceded (as it must) that if *DeRosso* remains good law, its argument is left with the hair-thin lifeline that zoning is not a local approval under the statute. Hence, the Village directs us to *Willow Creek Ranch, LLC v. Town of Shelby*, 2000 WI 56, 235 Wis. 2d 409, 611 N.W.2d 693, which the Village contends, "walked back the language in *DeRosso* by limiting the scope of 'local

---

[11] The court also found that the ordinance violated the third and fourth *Anchor* tests. *DeRosso*, 200 Wis. 2d at 662 (citing *Anchor Sav. & Loan Ass'n v. Equal Opportunities Comm'n*, 120 Wis. 2d 391, 397, 355 N.W.2d 234 (1984)).

approvals' that are automatically preempted" to only local approvals relating to the operation, not location, of clean fill sites.

¶ 15. In *Willow Creek*, the plaintiffs sought to open a game bird farm where local zoning prohibited it. *Willow Creek*, 235 Wis. 2d 409, ¶¶ 4, 6. The plaintiffs maintained that DNR licensing scheme for such farms preempted the local zoning ordinance. *Id.*, ¶ 16. The supreme court disagreed and held that the local zoning ordinance did not conflict with the state regulations. *Id.*, ¶¶ 22–23. The court noted *DeRosso* and other cases but distinguished them because they "involve local ordinances that attempt to regulate the identical activity as the state and that are 'diametrically opposed' to the state's policy." *Willow Creek*, 235 Wis. 2d 409, ¶ 22 (quoting *Wisconsin's Envtl. Decade, Inc. v. DNR*, 85 Wis. 2d 518, 535, 271 N.W.2d 69 (1978)).[12]

¶ 16. The Village apparently reads this decision as functionally modifying *Anchor* and establishing a new test in its place to the effect that local regulation is allowed unless it is "diametrically opposed" to state policy.[13] *See Willow Creek*, 235 Wis. 2d 409, ¶ 22. Thus, the Village maintains that its zoning ordinance is not "diametrically opposed" to DNR's licensing scheme and not preempted.

---

[12] *DeRosso* also cited *Wisconsin's Envtl. Decade, Inc. v. DNR*, 85 Wis. 2d 518, 535, 271 N.W.2d 69 (1978), for the proposition that an ordinance that "defeats the purpose of state legislation" is preempted. *DeRosso*, 200 Wis. 2d at 651 & n.7.

[13] The Village does cite *Anchor*, but it provides little distinction between the four independent tests the supreme court established. Instead, it blurs the lines between the various *Anchor* tests by suggesting that a municipality may regulate an activity as long as such regulation is not "diametrically opposed" to a statewide regulatory scheme.

¶ 17. The Village misreads *Willow Creek*, which rests on analysis of an entirely separate statutory scheme. The court's "diametrically opposed" language —only cited once—reflected the court's conclusion that these prior cases, including *DeRosso*, involved a direct conflict that did not exist in that case, nothing more. The *Willow Creek* court did not expressly or impliedly overrule the *Anchor* preemption tests. Nor did it explicitly address the first *Anchor* test we rely upon here. It did not expressly or impliedly withdraw any language from *DeRosso*. It did not address WIS. STAT. § 289.43(8) or WIS. ADMIN. CODE § NR 500.08 or otherwise alter the statutory analysis conducted in *DeRosso*. *See Willow Creek*, 235 Wis. 2d 409, ¶¶ 15–23. In short, *Willow Creek* is entirely consistent with *DeRosso*; it did not alter its analysis in any way.[14]

¶ 18. Furthermore, the Village's cabined reading of *DeRosso* is not reasonable or consistent with the statute. If the Village is right, and clean fill facilities must comply with local zoning, then a municipality could permanently block the construction of a clean fill facility by rezoning to prohibit landfills, or by having no areas zoned for clean fill, or by providing only one or two limited or impractical locations for such facilities. This would be directly contrary to the purpose of WIS. STAT. § 289.43 as interpreted by *DeRosso*, 200 Wis. 2d at 663 (explaining that by enacting § 289.43(8), the legislature has provided "that so long as the DNR

_____

[14] Subsequent case law confirms that *DeRosso* is still good law and that *Anchor* remains the controlling paradigm for preemption cases. *See, e.g., Lake Beulah Mgmt. Dist. v. Village of East Troy*, 2011 WI 55, ¶ 15, 335 Wis. 2d 92, 799 N.W.2d 787 (citing *DeRosso* with approval and for its preemption test); *Apartment Ass'n of S. Cent. Wis., Inc. v. City of Madison*, 2006 WI App 192, ¶ 13, 296 Wis. 2d 173, 722 N.W.2d 614 (same).

determines that certain low-hazard waste facilities do not significantly jeopardize the environment or public health, their establishment should not be impeded by local rule or ordinance").

¶ 19. In sum, *Willow Creek* is inapposite. This case is not about local zoning versus statewide licensing authority. Rather, the question here is whether this particular statutory scheme preempts local approvals required to construct a clean fill facility by expressly withdrawing the municipalities' power to act. This statutory interpretation question has been settled by *DeRosso*, which remains authoritative and unmodified. Local approvals required to construct such a facility, as defined by WIS. STAT. § 289.33(3)(d), are preempted and no longer required for exempt clean fill facilities. Because we conclude that the legislature has expressly withdrawn the Village's power to act, we need not address the remaining three *Anchor* tests. The outstanding question is whether the Village's zoning ordinance and construction storm water and erosion regulations are "local approvals."

¶ 20. WISCONSIN STAT. § 289.33(3)(d) defines "local approval" as follows:

> any requirement for a permit, license, authorization, approval, variance or exception or any restriction, condition of approval or other restriction, regulation, requirement or prohibition imposed by a charter ordinance, general ordinance, zoning ordinance, resolution or regulation by a town, city, village, county or special purpose district . . . .

*Id.* The definition then includes a lengthy, nonexhaustive list of enumerated statutory local approvals, among them, WIS. STAT. § 61.34 (police powers of the

village board),[15] Wis. Stat. §§ 62.23(7) and 61.35 (conferring zoning power to villages),[16] and Wis. Stat. § 61.354 (construction site erosion control and storm water management zoning).[17] Sec. 289.33(3)(d).

■

¶ 21. The zoning ordinance here would seem to squarely fall within the more general stricture, "any requirement . . . or any restriction . . . imposed by a . . . zoning ordinance." *See* Wis. Stat. § 289.33(3)(d). And if there were any doubt, Wis. Stat. §§ 61.35 and 62.23, which confer zoning power to villages, are explicitly enumerated as local approvals as well. Because zoning requirements are expressly listed as local approvals in the statute, a clean fill facility like the one Scenic seeks to establish is exempt from any zoning requirements. End of story.

---

[15] WISCONSIN STAT. § 61.34 provides the following:

(1) GENERAL GRANT. Except as otherwise provided by law, the village board . . . shall have power to act for the government and good order of the village, for its commercial benefit and for the health, safety, welfare and convenience of the public, and may carry its powers into effect by license, regulation, suppression, borrowing, taxation, special assessment, appropriation, fine, imprisonment, and other necessary or convenient means.

This "general grant" describes the "police powers" of the Village. *Zwiefelhofer v. Town of Cooks Valley*, 2012 WI 7, ¶ 5 n.3, 338 Wis. 2d 488, 809 N.W.2d 362.

[16] WISCONSIN STAT. § 62.23(7) grants zoning powers to cities and Wis. Stat. § 61.35 provides that this grant of authority extends to villages as well. *Zwiefelhofer*, 338 Wis. 2d 488, ¶ 26–27.

[17] "[A] village may enact a zoning ordinance, that is applicable to all of its incorporated area, for construction site erosion control at sites described in [Wis. Stat. §] 281.33(3)(a)1.a. and b. and for storm water management." Wis. Stat. § 61.354(2).

295

¶ 22. The Village's zoning argument never grapples with the language of Wis. Stat. § 289.33(3)(d) or Wis. Stat. §§ 61.35 and 62.23, nor does it squarely respond to these statutory arguments made by Scenic. Rather, it offers a doomsday scenario in response. According to the Village, Scenic's interpretation would allow a clean fill facility to be sited "literally anywhere" in Wisconsin subject to a few limited restrictions imposed by DNR. But as the *DeRosso* court noted, DNR has not allowed clean fill facilities to go completely unregulated. "Instead, the DNR has established an alternative regulatory scheme . . . designed to insure that the plaintiffs' facility does not compromise the integrity of the environment or the health of the City's residents." *DeRosso*, 200 Wis. 2d at 662. The court explained that clean fill facilities "must still conform with the requirements of Wis. Admin. Code § NR 504.04(3) and (4)." *DeRosso*, 200 Wis. 2d at 661.

¶ 23. Among these requirements, a clean fill facility may not be operated within a floodplain. Wis. Admin. Code § NR 504.04(3)(c). These regulations also impose "performance standards" prohibiting the operation of a clean fill facility where it would have a "significant adverse impact on wetlands," cause a "take" of an endangered or threatened species, have a detrimental effect on surface water or groundwater quality, cause "migration and concentration of explosive gases" above certain limits, or emit "any hazardous air contaminant exceeding the limitations for those substances." Section NR 504.04(4)(a)-(f). Additionally, Wis. Admin. Code § NR 500.08(2) requires that all clean fill facilities "shall be operated and maintained in a nuisance-free and aesthetic manner."

¶ 24. These regulations make clear that the free-for-all scenario the Village paints is a tad overstated.

*DeRosso* pointed out that DNR retains significant control over the siting of clean fill facilities through its regulations. Thus, we do not think interpreting Wis. Stat. § 289.43(8) as preempting local zoning leads to absurd results or is otherwise an irrational reading of the statute. Leaving the regulation of clean fill facilities to DNR may or may not be good policy, but it is what the legislature and DNR have done through statute and administrative rule (as interpreted by the supreme court). And that is what must dictate the outcome.

¶ 25. Finally, the parties dispute whether the storm water and erosion permitting requirements contained in the Village of Richfield Municipal Code §§ 167–8 and 167–23 are preempted.[18] Sections 167–8 and 167–23 both concern preconstruction permits.[19] Because the necessary permits were not obtained, the Village insists that the project cannot proceed. Wisconsin Stat. ch. 283 and Wis. Admin. Code § NR 216.07—the Village's asserted basis for sections 167–8 and 167–23 —are not specifically enumerated in the definition of

---

[18] Although the Village claims that these sections are "most pertinent to this appeal"—implying that other requirements exist—its list of required approvals sent to Scenic only includes these two sections. In its briefing, the Village never identifies any other specific sections Scenic is required to comply with. Thus, we only explicitly address these sections.

[19] Village of Richfield Municipal Code Section 167–8 provides that Scenic must obtain a "post-construction runoff permit from the Village of Richfield prior to commencing" construction. Section 167–23 provides that "[n]o responsible party may commence a land disturbing construction activity subject to this article without receiving prior approval of an erosion and sediment control plan for the site and a permit from the Village Engineer."

297

"local approval." However, the definition indicates it is not limited to enumerated statutes. *See* WIS. STAT. § 289.33(3)(d) ("including without limitation because of enumeration"). Thus, we must look to the first part of the definition. Its exceptionally broad and inclusive language, in our view, fairly includes the Village's preconstruction storm water and erosion permitting requirements. A local approval includes "any requirement for a permit," "any restriction . . . regulation, requirement or prohibition imposed by a . . . general ordinance," and any "resolution or regulation by a . . . village." *Id.* Among the enumerated local approvals are general ordinances enacted by the village board pursuant to the village's police powers granted in WIS. STAT. § 61.34 and regulations regarding "[c]onstruction site erosion control and storm water management" under WIS. STAT. § 61.354, the same subject matter as the Village's regulations.

¶ 26. The Village responds that it is required by DNR to obtain its own municipal WPDES permit—a point source permit—for its municipal storm sewers. *See* WIS. ADMIN. CODE § NR 216.02 (requiring "owners or operators of municipal separate storm sewer systems" to obtain a WPDES permit); WIS. ADMIN. CODE § NR 216.01 (clarifying that municipal storm sewers are point sources under WIS. STAT. § 283.33). The Village declares that the requirements of this municipal WPDES permit (outlined in WIS. ADMIN. CODE § NR 216.07) obligate the Village to maintain a "program to detect and remove illicit discharges . . . into the municipal separate storm sewer system" and a program to regulate storm water runoff from construction sites. The Village asserts that it complied with these obligations by enacting sections 167–8 and 167–23. The Village argues that interpreting WIS. ADMIN. CODE § NR

298

500.08 as exempting Scenic from compliance with the Village's own permitting process undermines its obligations under § NR 216.07.

¶ 27. Although the regulations governing the Village's WPDES permit are complex, the Village's argument is underdeveloped at best, and we need not address it at length. *See State v. Pettit*, 171 Wis. 2d 627, 646–47, 492 N.W.2d 633 (Ct. App. 1992) (explaining that we will not serve as advocate by developing a party's arguments for them). The Village does briefly explain the requirements of its municipal WPDES permit, but—as with its zoning argument—it fails to address the real issue: whether sections 167–8 and 167–23 are local approvals as defined in Wis. Stat. § 289.33(3)(d). Furthermore, the Village does not explain why Scenic's WPDES general permit—which provides coverage for Scenic's "construction site"— does not already satisfy the relevant DNR imposed requirements.[20] Wisconsin Stat. § 283.35(1) provides that DNR may issue a general permit "[i]nstead of issuing a separate permit to an individual point source." The Village has not shown this to be a regulatory vacuum. Scenic must comply with the storm water and erosion requirements in its WPDES general permit as well as any other applicable DNR regulations going forward. Wisconsin Admin. Code § NR

---

[20] For example, the definition in DNR regulations clarifies that "discharges authorized by a WPDES permit" are not "illicit discharges." *See* Wis. Admin. Code § NR 216.002(11). Because Scenic already has a WPDES permit, as long as that permit is followed it would seem—at least upon first glance— that Scenic's activities would not lead to "illicit discharges." Thus, if no illicit discharges exist, then the Village need not be concerned about detecting and removing them. But the Village never fully addresses the interaction between its WPDES permit and the one issued to Scenic.

500.08 merely exempts Scenic from the Village's local preconstruction storm water and erosion permitting requirements expressed in sections 167–8 and 167–23. In short, the Village fails to muster any meaningful argument regarding the definition of local approvals or otherwise identify why its preconstruction storm water and erosion permitting requirements are not preempted.

¶ 28. We see no reason DNR cannot—through WIS. ADMIN. CODE § NR 500.08—create an exception to its own regulations contained in WIS. ADMIN. CODE § NR 216.07, and the Village makes no argument that DNR cannot do so.[21] Indeed, *DeRosso* explained that § NR 500.08 was intended to do just that: create a blanket exemption from certain DNR regulations, including the requirement to comply with the local approvals (as defined) required to construct the facility. *See DeRosso*, 200 Wis. 2d at 663. Such a blanket exemption was intended to preempt all "exclusionary local regulations and ordinances." *Id.*

¶ 29. Given the sweeping definition of "local approvals," we conclude that the Village's zoning ordinance and construction storm water and erosion regulations are included. The zoning ordinance is expressly enumerated as a local approval, and the definition of "local approvals" is broad enough to include the Village's identified permitting requirements even though they are not expressly enumerated. The Village makes no real argument otherwise. Instead, the Village wishes us to focus on the policy consequences of the preemption analysis rather than the analysis itself.

_____

[21] Because our decision is based on DNR's own administrative rules, nothing would prevent DNR from modifying its rules to require, for example, compliance with local storm water and erosion requirements.

Our question is whether the zoning ordinance and construction storm water permitting requirements are "local approvals" as defined by statute; we conclude they are.

## CONCLUSION

¶ 30. WISCONSIN STAT. § 289.43 and WIS. ADMIN. CODE § NR 500.08 have expressly withdrawn the Village's power to require clean fill facilities to comply with local approvals as defined in WIS. STAT. § 289.33(3)(d), among them, zoning and storm water and erosion permitting requirements. Accordingly, we reverse the circuit court's order granting summary judgment to the Village, and remand with directions that the circuit court grant Scenic's motion for partial summary judgment.[22]

*By the Court.*—Order reversed and cause remanded with directions.

[22] Should we rule in favor of Scenic, the Village argues that granting summary judgment in Scenic's favor is inappropriate. The Village argued in its brief that a genuine issue of material fact exists as to whether Scenic's proposed landfill would comply with the requirement that it be operated in a nuisance free and aesthetic manner per WIS. ADMIN. CODE § NR 500.08. However, upon questioning the Village appeared to concede in oral argument that this factual question is simply not before us at this time, and any ruling in that regard would be premature. Indeed, Scenic requested partial summary judgment on the limited issue of whether it needed to comply with local approvals—specifically the Village's zoning code and storm water and erosion ordinances. Therefore, the appropriate remedy is for the circuit court to grant the declaratory judgment that Scenic need not comply with any local approvals as defined in WIS. STAT. § 289.33(3)(d). Any dispute over the operation of the landfill is not before us at this time.